## GREELE *vs.* PARKER.

Where A. for the accommodation of B. endorsed a bill of exchange for $2500, drawn by B. on C. payable *four months* after date, in consequence of being shewn a letter from C. to B. saying, "I have no objections to accepting for you *at* 3 *and* 4 *months* for $2500, *on the terms you propose;*" which bill of exchange was discounted by a bank and passed to the credit of B. and to the payment of which A. was subsequently subjected: *it was held,* that A. was entitled to recover against C. on the *acceptance* contained in the letter, without shewing what were *the terms proposed* adverted to in the letter, or a compliance with them; and notwithstanding that one bill was drawn at *four months,* instead of two bills at 3 *and* 4 months.

The CHANCELLOR and *seven senators* dissented from this decision. See the reasons of the Chancellor, in the opinion pronounced by him.

ERROR from the supreme court. Parker endorsed a bill of exchange for the accommodation of D. H. Stone, drawn by Stone on Greele for $2500, dated 11th February, 1827, payable *four months* after date; Parker was induced to become such endorser on being shewn by Stone a letter from Greele to him bearing date New-York, 9th February, 1827, in these words: "I have received 42 bundles medium as you mentioned. The imperial I think will sell readily. I have no objections to accepting for you for 3 and 4 months for $2500, on the terms you propose. I hope our navigation

will be free by 15th or 20th instant." Stone was a paper

manufacturer at Troy, and had had extensive dealings with Greele for two years past. The bill drawn by Stone, endorsed by Parker, was discounted at a bank in Troy, 15th February, 1827, and passed to the credit of Stone; it was sent by the bank to New-York to obtain Greele's acceptance; he refused to accept, and the bill was duly noted for non-acceptance, and when due, protested for non-payment. The plaintiff paid it at the bank, and brought his action against the defendant. On the trial at the circuit, the plaintiff resting upon shewing the above facts, the defendant moved for a nonsuit on the grounds, 1. That the letter did not in its terms amount to an acceptance; 2. If it amounted to an acceptance, such acceptance was conditional, and the plaintiff was bound to prove the terms of the condition, and their fulfilment to entitle him to recover; and 3. If the letter was an engagement to accept, it was to accept at *three* and *four* months, and the terms of the engagement should have been strictly pursued by drawing two bills of equal amount, one at three and the other at four months. The nonsuit was refused, and the presiding judge decided that the letter of the defendant was an *unconditional* agreement to accept the bill, and therefore equivalent to an absolute acceptance on the face of it; that the bill was drawn in compliance, substantially, with the letter of the defendant; that the engagement did not contain any condition; that the letter appeared to have been written in answer to a request or proposal made by Stone to the defendant to accept for him at 3 and 4 months for $2500, and the expressions "on the terms you propose" might well be referred to the proposal thus to accept, that is, for $2500 at 3 and 4 months; that the authority to draw two bills at 3 and 4 months was for Stone's benefit; and a bill at *four* months for the whole amount was most favorable to the defendant, and a compliance with the spirit of the engagement, and that the plaintiff was entitled to a verdict. The defendant excepted to the decisions of the judge. The jury found for the plaintiff. The defendant moved the supreme court for a new trial, which was denied, and judgment rendered for the plaintiff. For

NEW-YORK, *case, arguments of counsel and opinion of court,* see 2 *Wendell,*
Sept. 1830. 545 to 550.

Greele
v.
Parker.

The cause here was argued by

*C. Walker & J. L. Viele,* for plaintiff in error.

*A. Van Vechten,* for defendant in error.

The following opinions were pronounced :

By the CHANCELLOR. It is a well settled rule of the com-
mercial law of this country, and of most of the nations of Eu-
rope, except England, where it has recently been abolished
by statute, that an unconditional promise in writing to accept
a bill of exchange, if made within a reasonable time before or
after the date of the bill, and describing the same in terms not
to be mistaken, is a virtual acceptance thereof, in favor of any
person to whom such promise has been shown, and who has
received the bill for a valuable consideration on the faith of
such promise. The question in this case is whether Greele's
letter of the 9th of February, 1827, was an unconditional
promise to accept such a bill as was drawn by Stone, and en-
dorsed by Parker, on the 11th of the same month.

If the letter was an absolute and unconditional promise to
accept the bill, the drawee could not, as against a third par-
ty who had received or endorsed the bill on the faith of that
promise, show by any extrinsic evidence that he did not in-
tend to accept the bill until certain conditions were complied
with. The circuit judge, by deciding that the letter contain-
ed an absolute promise to accept, necessarily precluded the
defendant from giving any evidence to alter the legal effect
of that promise. But as the letter was only a conditional
acceptance, referring to some other letter or paper for the
terms on which the drawee consented to become the accept-
or of the bills to be drawn, it was incumbent on Parker to
show what those terms were, and that they had been com-
plied with.

Suppose in this case the terms were as stated in the se-
cond count of the plaintiff's declaration, which probably
was the fact; the case would stand thus : Greele has al-

ready accepted a draft for $1250 for the accommodation of Stone, to meet which, according to his engagement, the latter sends to Greele 42 bundles of medium paper. He then proposes to pay and take up the $1250 draft himself; and perhaps to send a quantity of imperial paper to the defendant to be sold on his account. And he then enquires of Greele whether he will consent to accept other drafts to the extent of $2500 on those terms. The latter replies, "I have no objection to accepting for you at 3 and 4 months for $2500 on the terms you propose." Is there any thing in this out of the ordinary course of business? Commercial correspondence is usually short and comprehensive. The answer to a proposal generally refers to the proposal itself for some or all of the details thereof. In such cases the proposition and the answer must be taken together for the purpose of ascertaining what was the agreement between the parties. When the drawee agrees to accept on the terms proposed by the drawer, without specifying what those terms are, no prudent man would take the bill on the credit of that agreement without enquiring as to the nature of the terms proposed. And the drawee cannot be charged as acceptor without proving the whole agreement. For this purpose the party seeking to recover against him on the bill must produce or prove the original proposition as well as the answer assenting thereto. The case of *Read* v. *Wilkinson*, in the circuit court of the United States for the Pennsylvania district, 2 *Wash. C. C. Rep.* 514, was similar to the present, though it was much stronger; as that was an actual acceptance on the bill itself, whereas in this case there was only an executory promise to accept. There the drawee accepted the bill "on the terms mentioned in his note," without specifying what those terms were. And on the trial before the late Judge Washington the plaintiff's counsel insisted that the defendant should prove what those terms were, or that it should be taken as an absolute acceptance of the bill. But the court decided that it was a conditional acceptance; and that it was incumbent on the plaintiff to prove what the terms were, and that they had been complied with.

In the case before us the court below took it for granted, although there was no evidence on the subject, that the letter of the 9th of February was in reply to a written communication, sent by the person who delivered the paper, which was still in the possession of the defendant. Probably this was so ; but that did not relieve the plaintiff from the necessity of proving what the defendant's agreement was. If any part of the correspondence which constituted the agreement was in the hands of Greele, the proper course for the plaintiff was to call on him to produce it on the trial ; and, if he refused, parol evidence might have been given of its existence and contents. Stone was called as a witness for the plaintiff, and could have stated whether the letter was in answer to a written communication or to a verbal message ; and if to the former he could have proved the contents thereof. It was the duty of the plaintiff to produce this proof to sustain his case. As he neglected to do this he had no right to recover ; and the motion for a nonsuit should have been granted.

Again ; if the plaintiff had shown what the proposed terms were, and that they had been complied with, I do not think the drawee was by his promise bound to accept such a bill as was drawn in this case. The legal effect of an agreement to accept for $2500 at 3 and 4 months, is to accept for the one half at 3, and for the residue at 4 months. I should also think that among merchants an agreement to accept at 3 and 4 months would be understood that length of time, after the presentment of the bill, and not from its date. The supreme court say the longest time is most beneficial to the acceptor ; and therefore a draft for the whole amount at four months was a compliance with the terms of the authority to draw. If that principle is correct, it would seem to follow that the bill should have been so drawn as to give the drawee 3 and 4 months from the time of *presentment* before it became payable. But in cases of this kind I do not think we are at liberty to speculate upon what would probably be most beneficial to the acceptor. If an acceptance was always founded upon funds in the hands of the drawee it might be no disadvantage to him to have the day of payment postponed ; but it is well known that a large proportion of our inland bills of exchange are accommodation paper, accepted on the

credit of the drawer; and upon the understanding that he will furnish funds to meet them when they fall due. In such cases the acceptor is in the nature of a surety for the drawer, and the time of payment cannot be extended except by his consent. Without knowing the particular inducements which led to the promise in this case, we cannot say with any degree of certainty whether a longer or shorter period of payment would have been most beneficial for Greele. If one half of the sum had been payable in three months, perhaps Stone might have paid it to the holder of the bill, or have furnished the funds to meet it before his failure. The true question therefore is whether this was such a bill as the defendant agreed to accept. One of the rules laid down by Chief Justice Marshall, in relation to virtual acceptances in consequence of a previous promise is, that the bill shall be described in terms not to be mistaken. If the drawee is bound to accept a bill at *four* months under an agreement to accept one payable at *three*, upon the presumption that it is more beneficial for the acceptor, he may on the same principle be compelled to accept a bill payable in two years under an agreement to accept a similar bill payable in sixty days. Judges have frequently regretted that this principle of constructive acceptances was ever adopted. The evil has been found so great in England as to produce the abrogation of the principle by act of parliament; and in a recent decision, the supreme court of the United States has evinced a strong disposition to restrict the doctrine within its narrowest limits. *Schimmelpennick* v. *Bayard*, 1 *Peters' Rep.* 264. If Parker was misled or deceived in this case, it must have been by the misrepresentations of Stone, or by his own negligence, and not by the terms of the defendant's letter. As the letter did not contain any promise to accept such a bill, the legal presumption is that the endorser relied upon the credit of Stone and not upon the promise of Greele. The payment of the money would probably be a dead loss to either of the parties in this suit. Public policy forbids the extension of the rule as to implied acceptances beyond what former decisions have carried it; and there is no particular equity in this case which can make such an extension desirable. The provisions of the revised statutes on this subject will be worse than

useless if the decision of the circuit judge is sustained ; as the effect will be, very frequently, to charge persons with the payment of bills which they never intended to accept until some terms which were essential to their security, had been complied with by the drawer.

I think the decision of the court below was wrong, and should be reversed,

By Mr. Senator ALLEN. The question appears to have been settled by numerous decisions, that a letter promising to accept a bill of exchange, describing it in terms sufficiently plain to be understood, shewn to a person as the authority upon which a bill is drawn and accepted by him on the credit of such letter, is a virtual acceptance and binding upon the writer. *Coolidge* v. *Payson*, 2 *Wheat.* 66. *Goodrich* v. *Gordon*, 15 *Johns. R.* 6. *Johnson* v. *Collings*, 1 *East*, 98. *Milne* v. *Priest*, *Chitty on Bills*, 5. An authority to draw bills is virtually an acceptance of any bills drawn in conformity to it. *Banorgee* v. *Hovey*, 5 *Mass. R.* 11.

The reason of the rule, as I apprehend, is, that without it much embarrassment would be thrown in the way of commercial transactions, as a knowledge that a draft will be accepted is often of the utmost importance to the drawer in assisting the negotiation of his bills of exchange ; and if the promissor was not bound by what he had written, extensive frauds might and no doubt would be practised, under the guise of these written engagements ; in fact the rule prevents frauds, and accommodates the mercantile transactions of the country.

The only question which can possibly arise in the case under consideration is, whether the letter written by Greele amounted to an acceptance, within the rule as established by the courts. The words of the engagement are, "I have no objection to accept for you, at 3 and 4 months, for twenty five hundred dollars, on the terms you propose." When a person is requested to perform an act, and in answer states that he has no objection to perform it, the only inference that can be drawn from the answer is that he will perform ; and in my view, therefore, the words of the letter were sufficiently explicit to induce the defendant in error to consider them as a promise to accept for the specified amount.

It has been objected that if the letter amounts to an acceptance, it was only *conditional.* There is no condition however set forth in the letter, unless it be included in the words, " on the terms you propose." We hear nothing on the trial of any condition, except it be what is stated in one of the counts of the declaration, namely, that Stone should take up a bill for $1250, drawn on and accepted by Greele at a former period. These terms, it is avowed, were fulfilled, and the bill of exchange was paid by Stone on the 27th May, 1827. If these were the terms, then I am to presume they were performed on the part of the drawer of the bill; and if they were not performed, and were considered of any importance in the decision of the cause, it is unaccoutable that the counsel for the defendant in the court below should have omitted while *Stone* was on the stand as a witness, to interrogate him as to the terms.

It was objected also that the authority to draw was at 3 and 4 months in two bills, while the bill in question was drawn at 4 months and for the whole amount. The authority was to draw for $2500, and the difference is not perceived between a draft of two bills amounting together to $2500, and one bill of that amount. If the authority to draw and the promise to accept was binding for two, it must be so for one ; especially as the one draft was on more favorable terms for the acceptor than that mentioned in the letter, which authorized drafts at three and four months, equal to three and a half months, while the draft drawn was four months.

I am of opinion, therefore, that the judgment of the court below was correct and ought to be affirmed.

By Mr. Senator BEARDSLEY. Parker, the plaintiff below, was a voluntary endorser of the bill in question, without benefit to himself, to enable Daniel H. Stone, the drawer, to obtain the cash at the bank. The letter of Greele was shewn to Parker at the time the bill was drawn and endorsed, and no doubt was endorsed as well as discounted on the credit of Greele.

Although doubts were expressed by Chief Justice Kent, in *McEvers* v. *Mason,* 10 *Johns. R.* 214 *to* 216, whether an agreement to accept a bill thereafter to be drawn would amount to an acceptance, or could be enforced by the en-

dorsee, yet the law is now considered well settled that an agreement to accept is binding if drawn within a reasonable time, and such agreement was made known to the endorser, and the bill was endorsed or negotiated on the credit of the acceptor. 15 *Johns. R.* 6. 2 *Wheat.* 66. The exposition of the law merchant in regard to acceptances by Lord Mansfield, in *Mason* v. *Hunt, Doug.* 286, has been sustained by the English courts, and adopted by our own courts. *Clark* v. *Cook,* 4 *East,* 57. *Wynne* v. *Raikes,* 5 *East,* 514. *Chitty on Bills,* 138, &c. 15 *Johns. R.* 6 *to* 13. 2 *Wheaton,* 66.

The letter of Greele is a virtual agreement to accept to the amount of $2500 at 3 and 4 months, and the moment the bill was drawn and endorsed became binding upon him. It amounts to an absolute agreement unexplained ; and if he wished to shew it a *conditional* one, it was his business to have produced the letter of Stone, or to have proved what the condition was.

The theory in regard to bills of exchange is, that the acceptor or drawee has funds in his hands belonging to the drawer, and it is on the credit of these funds that the bill is drawn. *Chitty on Bills,* 2, 3. 1 *T. R.* 406, &c. 3 *id.* 182. Unexplained, we must presume in the present case that it was drawn upon funds.

The bill being drawn at 4 months, the longest period, instead of 3 and 4 months, was for the benefit of Greele, who held the funds, or gave credit to the drawer ; and is not to be objected to on that account, especially as he did not object or offer to prove that he was without funds. The judgment must be affirmed.

On the question, Shall this judgment be reversed? the members voted as follows :

For *affirmance*—Senators ALLEN, ARMSTRONG, BEARDS-LEY, BENTON, BOUGHTON, BRONSON, CONKLIN, DEITZ, GERE, McMARTIN, REXFORD, THROOP, TODD, and WARREN—14.

For *reversal*—The CHANCELLOR, and Senators MATHER, MAYNARD, McCARTY, McLEAN, OLIVER, SHERMAN, and WHEELER—8.

Whereupon the judgment was *affirmed.*