GREEN DAVIDSON *v.* JOSEPH M. KEYES and another.

The acceptor of a bill has no right to inquire into the consideration between the drawer and payee, or between the latter and a subsequent indorsee. If he pay th? bill, he cannot be affected by any want or failure of consideration which the drawer, or payee may set up.

It is no defence to an action on a bill drawn under an unconditional authority, to allege that the authority should have been used in a particular way. Though the holder of the letter of credit abuse the confidence reposed in him, by applying it to purposes not contemplated or improper, the party who gave the letter cannot complain of the acts of one whom he trusted with an unconditional authority.

The holder of a negotiable instrument is not required to prove the consideration which he gave for it, unless specially called upon by the answer so to do.

APPEAL from the Commercial Court of New Orleans, *Watts,* J.

MORPHY, J. This action is brought by the indorsee of a bill of exchange, drawn upon the defendants by Clymer, Polke & Co. of Charleston, Mississippi, to the order of George Morgan McAfee, by whom it is alleged to have been indorsed, and delivered to the petitioner, together with a letter of credit in pursuance of which it was drawn. The letter is in the following terms, to wit :

*New Orleans, 11th June,* 1838.

*Messrs. Clymer, Polke & Co.*

Gentlemen :—We hereby engage to accept your draft on us, to fall due after the 1st of March, 1840, to the extent of four thousand dollars.

Very respectfully, your ob't servants,

KEYES & ROBERTS.

The draft bears date the 8th of December, 1839, and was made payable ninety days after date. The answer denies all indebtedness to the plaintiff, and avers that the letter of credit was not given by the defendants, or by any one authorized by them to give it, and that the plaintiff was duly informed, before the bill came into his possession, that no such letter of credit had been given by the defendants, and that they would not accept, or pay at maturity any bill drawn under the same. The answer further pleads that no consideration was ever given to Clymer, Polke & Co. for the letter, and that the plaintiff had notice of that circumstance.

There was a judgment below in favor of the defendants, and the plaintiff has appealed.

The first ground of defence set forth in the answer has not been insisted upon in this court, to wit, that Gamble, the clerk of the defendants, who signed the letter of credit, was not authorized to do so. It rested on the same evidence as that given in the suit of Mosely against the same defendants, reported in 18 La. 46. But it is urged on the part of the defendants, that no advance was made on, nor credit given to their gauranty, and that Clymer, Polke & Co. did not make a fair and legitimate use of their letter of credit, they having employed it to pay the existing debt of a third person. The evidence shows that one A. H. Davidson having applied to Morgan McAfee for the payment of a debt of about $3200 due to him by the latter, McAfee offered to give him a draft on some house in New Orleans, but at the same time told him that he had no authority to draw, and that Davidson declined the offer, whereupon Clymer, one of the firm of Clymer, Polke & Co., who was present at this conversation, said that he had authority to draw for $4000 on Keyes & Roberts. Davidson having expressed his willingness to take such a draft, it was agreed that Clymer should draw in favor of McAfee for the whole sum, that the draft should be given to A. H. Davidson in payment of his debt, and that Davidson should pay the difference to Clymer, Polke & Co. The arrangement was accordingly made. It does not appear at what time the letter of credit was placed in the hands of A. H. Davidson, but in a letter which he wrote on the 25th of December, 1839, to his merchant in New Orleans, requesting him to inform Keyes & Roberts that he had bought this draft on them, he mentions the letter of credit as accompanying the draft. A. H. Davidson tried to have the bill discounted at a bank at Memphis, and it was understood that out of the proceeds he was to retain the debt due from Morgan McAfee to himself, and pay the balance to Clymer, Polke & Co. The draft not having been discounted, Davidson made an arrangement with the drawers by which he paid the balance accruing to them, and thus became the owner of the bill. The judge below was of opinion that the defendants were not bound under their letter of credit to pay this draft, because Clymer, Polke & Co. made use of the credit given them entirely out of the

ordinary range of the purposes for which letters of credit are generally given ; he was also of opinion that the draft could not be considered as having been taken in the usual course of trade, and that the present plaintiff, not having proved that he gave a valuable consideration for it, cannot recover. We do not acquiesce in these views. An acceptor of a bill has no right to inquire into the consideration between the drawer and payee, or between the latter and a subsequent indorsee ; if he pay the bill, he cannot be affected by any want or failure of consideration which the drawer or payee may set up. 4 Mart. N. S. 286. The defendants gave Clymer, Polke & Co. an unconditional authority to draw on them to a certain amount, and it is no defence to an action on a bill drawn under such authority, to say that it should have been used in any particular way. We believe that in most cases a letter of credit, or authority to draw, is given by a merchant with the view, and for the purpose of aiding the party obtaining it in some commercial business or enterprize which it is supposed will redound to the mutual benefit of both parties ; but if the holder of the letter of credit abuse the confidence reposed in him, and apply the credit to purposes however different or improper, the merchant is bound by the acts of the person he trusted, and cannot complain of the use made of an authority he thought proper to give without annexing to it any conditions. Neither can it be said that A. H. Davidson received the bill without giving a valuable consideration for it. He took it in payment of a debt of $3200 due to him, and paid the surplus to the drawers. If the latter were not indebted to Morgan McAfee, whose debt to Davidson they paid, they acquired against him a claim to that amount. If they were so indebted, their debt has been thus extinguished, and they must be considered as having received the amount. Although it does not appear from the evidence that the letter of credit was actually shown to Davidson at the time the agreement took place, it is clear that his consent to take the draft in payment of his debt was based on the information and assurance given him by Clymer of his authority to draw on the defendants, and that the letter containing that authority was placed in his hands by the persons having the power to dispose of it. As the evidence shows him to have been in possession of defendants' letter of credit when he ad-

vised the latter of his having bought the draft, it is but fair to suppose that it was given to him with the draft. The ineffectual attempts made by Davidson to have the draft discounted at Memphis, do not show that the draft was taken without reference to the guaranty. They only evinced his desire to cash it. Had he succeeded, he would probably have transferred to the Bank, the letter of credit, as well as the draft.

It has, further, been argued, that the draft was not drawn within a reasonable time after the date of the letter of credit, and that the draft was not so connected with, or pointed to by the letter of credit as to bind the defendants to its acceptance and payment. According to the terms of the credit the bill was to fall due after the first of March, 1840. By being made on the 8th of December, payable at ninety days, it fell due but a few days after the time prescribed. It might in our opinion have been drawn a month or two later, and yet have been drawn within a reasonable time. Some discussion took place at the bar in relation to the word *draft* used in the letter of credit, which, in one part of the record, is in the singular, while in another part it is in the plural number. We have referred to the original on file in the inferior court, and find that the word *draft*, and not *drafts* is used, thus we think sufficiently describing the bill promised to be accepted. *Coolidge* v. *Payson*, 2 Wheaton, 66. The plaintiff was not bound to prove the consideration he gave for the draft sued on, as he was not specially called upon by the answer to do so. 2 La. 455.

It is, therefore, ordered that the judgment of the Commercial Court be reversed, and that there be judgment for the plaintiff, and that he recover of the defendants *in solido*, the sum of four thousand dollars, with legal interest from the 10th of March, 1840, until paid, with costs in both courts.

*Anderson*, for the appellant.

*Jennings*, for the defendants.