The Ulster County Bank *v.* McFarlan.

*For affirmance:* THE PRESIDENT, THE CHANCELLOR, and *Senators* BARLOW, FOLSOM, HAND, LOTT, SANFORD, SCOVIL, J. B. SMITH and WILLIAMS—10.

Judgment affirmed.

THE ULSTER COUNTY BANK *vs.* McFARLAN.

The defendant gave to W. H. D. & Co. a letter in these words: "I authorize you to draw on me *at ninety days* from time to time for such amounts as you may require, provided that the whole amount running and unpaid shall not exceed $3000:" *held* that the authority to draw was limited to bills payable ninety days after *sight*, and that the defendant was not liable on one made payable ninety days after *date*.

The fact that W. H. D. & Co. had drawn several bills upon the defendant payable ninety days after date, which the plaintiffs had discounted on the faith of the letter and which the defendant had accepted and paid, does not preclude the defendant from objecting, in a suit on a bill subsequently drawn, that it was not in accordance with the authority.

A promise in writing to accept a bill before it is drawn, in order to amount to an actual acceptance, must describe it in terms not to be mistaken and so as to identify and distinguish it from other bills. *Per* HAND, *Senator.*

ON error from the supreme court. Upon the first trial of this cause the plaintiffs had a verdict which was set aside by the court upon exceptions taken by the defendant. The facts which appeared upon that trial, together with the opinion of the court, may be seen in the report of the case in 5 *Hill,* 432. Upon the second trial the same evidence was given as upon the former one; and the plaintiffs in order further to show the construction which the defendant had put upon the letter of December 19th, 1840, proved that seven bills of $1000 each had been drawn by W. H. De Forest & Co. upon the defendant prior to the drawing of the one in question, each of which was made payable ninety days *after date;* and that all of them were discounted by the plaintiffs on the faith of the defendant's letter; and they gave evidence tending to shew that they were all accepted by the defendant, and paid by him. One of these prior bills was dated

September 24th, 1841, and, as to that, one of the drawers testified that the defendant was present when it was drawn and knew that it was intended to be discounted at the plaintiffs' bank on the credit of the letter, and actually had the money obtained upon it. This bill was proved to have been accepted by the defendant, and the amount was collected of him by a suit on the bill. The circuit judge, holding that the additional evidence did not take the case out of the principle held by the supreme court in setting aside the former verdict, nonsuited the plaintiffs, who excepted. A new trial having been moved for by the plaintiffs and refused, and judgment of nonsuit having been rendered, the plaintiffs brought error to this court.

*A. Taber*, for the plaintiffs in error. 1. The construction given by the supreme court to the defendant's letter is erroneous. Bills drawn in the country are far oftener payable in a limited number of days after date than in any other way, the practice of drawing at a certain time after sight being inconvenient where the bill is to be discounted at a bank, as it is impossible to ascertain the discount in order to credit the holder with a precise sum. The terms of the letter in this respect are elliptical and imperfect, and such a construction should be given to them as will carry out the presumed intention of the parties. Again, the paper should be construed most strongly against the defendant, whose language it is, and most favorably to the plaintiffs, who have advanced money upon the faith of it. The supreme court have held the reverse of this rule, though it is well settled and is a fundamental one in the construction of contracts. ( *Throckmerton* v. *Tracy*, 1 *Plowd.* 156 ; 2 *Black. Com.* 380 ; *Bac. Ab. Covenant, F ; Chitty on Con.* 20 ; *Doe* v. *Dixon*, 9 *East*, 15 ; *Dann* v. *Spurrier*, 3 *B. & P.* 399 ; *Hargreave* v. *Smee*, 6 *Bing.* 244 ; *Munn* v. *Baker*, 2 *Stark.* 226 ; *Douglass* v. *Reynolds*, 7 *Pet.* 115, 122 ; *Chitty on Comm'l Law*, vol. 3. *p.* 115 ; *Story on Cont.* §§ 258, 260, 261 ; *Bullen* v. *Denning*, 5 *Barn. & Cress.* 842 ; *Walrath* v. *Thompson*, 4 *Hill*, 200.) 2. The judge erred in not submitting to the jury the evidence of the actual understanding of, and practical construction which the parties had

The Ulster County Bank *v.* McFa lan.

given to the contract. ( *Walrath* v. *Thompson, supra ; Fish*
v. *Hubbard's adm'rs,* 21 *Wend.* 651; *Pinero* v. *Judson,* 6 *Bing.*
206 ; *Cowen & Hill's Notes,* 200, 1399, 1362 ; *Com. on Land.
and Ten. p.* 18, *note q ; Trevivan* v. *Lawrence,* 2 *Smith's Lead-
ing Cases,* 435.) 3. The nonsuit having been granted on the
ground that the bill was not within the terms of the letter, on
account of the alleged variance as to the time of payment, the
question whether the letter would in other respects amount to
an acceptance does not arise.

*E. Sandford,* for the defendant in error. 1. The words "at
ninety days," used in the letter, were intended to define the term
of credit for which the defendant stipulated. It was designed
to give him that length of time after he had notice of the draw-
ing of a bill under the letter. Taking the letter to be an actual
acceptance, a bill payable like the one in question would not
need to be presented until maturity, the consequence of which,
upon the construction for which the plaintiffs contend, would be
that the defendant might be called upon to pay without any
prior notice whatever. ( *Walworth, Chan. in Greele* v. *Parker,*
5 *Wend.* 418.) 2. The letter was not an acceptance of the bill
in question. To amount to an acceptance, it must describe an
existing or prospective bill in terms not to be mistaken. This
was the rule before the statute, which was not intended to change
the law in respect to the terms of the promise to accept, but only
to require such promise to be in writing. (1 *R. S.* 768, § 8 ; 3
*id* 609, 2d ed. *original note of the revisers ; Coolidge* v. *Pay-
son,* 3 *Wheat.* 66 ; *Schimmelpennich* v. *Bayard,* 1 *Pet.* 264, 284;
*Boyce* v. *Edwards,* 4 *id.* 111 ; *Wildes* v. *Savage,* 1 *Story's Rep.*
22; *Parker* v. *Greele,* 2 *Wend.* 545 ; *Greele* v. *Parker, supra ,
Ontario Bank* v. *Worthington,* 12 *Wend.* 593, 598.) 2 The
defendant was not affected by the parol evidence given at the
trial. It was attempted to charge him as acceptor of the bill.
But an acceptance must be in writing. (1 *R. S.* 768, § 6.) Parol
evidence is never admissible to explain an intrinsic ambiguity.
There was nothing in the case like an estoppel *in pais.* (*Jack-*

*son* v. *Waldron,* 13 *Wend.* 178, 206; *Dezell* v. *Odell,* 3 *Hill,* 215, 219.)

HAND, Senator. The pleader in this case relies upon the common counts only, and treats the instrument given by the defendant as an acceptance. There is no count on an agreement to accept, the plaintiffs probably doubting whether there was sufficient privity of contract to support such an agreement, after the decision of *Birckhead* v. *Brown,* in this court last year.(a) In that case, however, the letter of credit was directed to particular persons; here it is general.

The section of the statute upon which the plaintiffs rely in this case, is as follows : " An unconditional promise in writing to accept a bill before it is drawn, shall be deemed an actual acceptance in favor of every person who, upon the faith thereof, shall have received the bill for a valuable consideration." (1 *R. S.* 768, § 8.) The letter written by the defendant, which is claimed to amount to an acceptance of the bill in question, is as follows : "New-York, Dec. 10, 1840. Messrs. W. H. De Forest & Co., Gent. I hereby authorize you to draw on me at 90 days, from time to time, for such amount as you may require, provided that the whole amount running and unpaid shall not exceed three thousand dollars. The above letter of credit to be good and binding for one year from this date." The court below thought this would have been an absolute acceptance of a draft for $1000, dated 25th of October, 1841, drawn by, and payable to the order of De Forest, if the time of payment had been conformable to the letter of credit. I do not assent to this construction of the statute. The cases relied on by the court are *Parker* v. *Greele,* (2 *Wend.* 545,) and *Greele* v. *Parker, S. C. in error,* (5 *id.* 414,) and *Bank of Michigan* v. *Ely,* (17 *id.* 508.) The first case was on a promise to accept for $250 at three and four months, and was clearly intended to be but one transaction. The names of the parties and amount were given, and the time the bill was to run, which was a far more definite description

(a) 2 *Denio,* 375.

than that given in this case. The last case turned altogether on another point. Whether a parol promise to accept a bill not *in esse* was ever good as an acceptance in this state, is doubtful: but after the case of *Coolidge* v. *Payson*, (2 *Wheat.* 66,) it was decided that a written promise might be so. C. J. Marshall, however, there said that it " must be described in terms *not to be mistaken.*" This has been repeated in strong confirmatory language in *Boyce* v. *Edwards*, (4 *Pet. R.* 111.) There the agreement to accept was as follows : " A. is authorized to draw on us for the amount of any lots of cotton which he may buy and ship to us, as soon after as opportunity will offer. Such drafts shall be duly honored." Again, " You are at liberty to draw on us when you send the bill of lading." The court held that the action, which was against the defendant as acceptor, would not lie, but that one on the agreement to accept would. They add, it is " a general authority, and does not point to any particular bills and describe them *in terms not to be mistaken*, as required by the rule in *Coolidge* v. *Payson.*" Mr. Justice Story also says, that the rule always was " that the paper containing the promise to accept, should describe the bill to be drawn, in terms not to be mistaken, so as to identify and distinguish it from others." (*Story on Bills*, § 249 ; *and see Riggs* v. *Lindsay*, 7 *Cranch*, 500.) *Pillans* v. *Van Mierop*, (3 *Burr.* 1663,) was an agreement to accept such bills as the plaintiffs should, in about one month's time, draw upon the defendants for £800. This was evidently but one transaction, and not intended to be a continuing letter of credit. Besides, like *Boyce* v. *Edwards*, it was a transaction mutually beneficial to both parties, and not a mere suretiship, as here. But that case has been much shaken, and is virtually overruled in England. If it were not, our courts have adopted the doctrine of *Coolidge* v. *Payson*, and that should be our guide. (*Goodrich* v. *Gordon*, 15 *John. R.* 6.) It may be added, that our statute speaks in the singular number, " to accept a bill,"—" shall have received the bill," &c. In this case there is a continuing contract with De Forest & Co. that he will accept, from time to time for them, under certain restrictions, bills not drawn in favor of any partic-

ular persons named, but generally, in favor of any one, to aid them in their business. It is hardly possible that this was intended to be an absolute acceptance *per se* of all the paper that De Forest & Co. should afterwards see fit to draw in favor of any and every person. If we construe it to be an acceptance, the defendant has no means of knowing the amount for which he is liable; and on the other hand, no one would be safe to take the paper, unless upon the sole credit of De Forest & Co.; for if we allow this general description in the promise to amount to an acceptance, an illimitable amount may be taken " on the faith thereof." But the ground upon which I put this part of the case is, that by the law of this country, irrespective of the statute, the promise must *point to the particular bills and describe them in terms not to be mistaken,* and that the statute has in no way enlarged that rule. On the contrary, if it has changed it at all, it has limited it more strictly than before. In the promise before us there is a drawer, drawee, and time to run, specified, but no payee, date, sum, or number of bills; but on the contrary, it contemplates the drawing of an unlimited number, in favor of any payee, of any date within the year, and for any sums not exceeding $3000 outstanding at any one time. Commercial business will not be facilitated by such a construction. Here may be scores of bills circulating, and in various hands, resting upon one stationary promise, which can be in the custody of only one at a time, and this paper is supposed to be a full acceptance of all of them as fast as they are drawn. I shall hesitate long before I venture to give to a statute so important, a construction which would warrant such confusion in this branch of the law merchant. It is believed that in every case where the promise has been deemed an acceptance, all the parties were known and mentioned in the promise.

But I have no doubt of the correctness of the opinion of the supreme court—that this was a promise to accept ninety days *after sight,* and not ninety days after *date.* If an absolute acceptance of bills payable ninety days after date, the defendant might be liable to be called on for payment the very first moment he knew of the existence of the bill. His credit might be

destroyed by the dishonor of the paper and the commencement of a prosecution, unless he should at once provide for a bill thus suddenly brought to his notice. This would be a severe construction against a guarantor or surety, against whom the rule of construction is liberal, and should not be permitted unless the language is entirely explicit. (3 *Kent*, 124; 12 *Pet.* 207; 8 *Bing.* 156.)

There is no estoppel in the case. For all that appears, the prior drafts had all been actually accepted by the defendant. All those which were proved had been. The payment of those for which he had committed himself by an independent act of acceptance, forms no impediment against his refusing one which he had not accepted, provided it was not drawn in conformity with the undertaking.

I think the judgment of the supreme court should be affirmed.

Lott, Senator. The material question in this case is, whether the bill on which it is sought to make the defendant liable, was drawn in conformity with the letter of credit. The authority was to draw "at ninety days." The bill in question was drawn payable ninety days *after date.* This was not, in my opinion, within the meaning and scope of the authority. It is evident from the nature of the letter of credit itself, that it was made for the accommodation of W. H. De Forest & Co., to whom it was given, and that the bills were not expected to be drawn on funds of the drawers. Uunder such circumstances, it would be doing violence to the intention of the parties to hold that the defendant intended to subject himself to a liability, to pay any amount not exceeding three thousand dollars, from time to time, during the year, without previous presentment or notice. He unquestionably meant that the words "*at ninety days,*" should have some effective operation. He was prescribing the terms on which drafts might be drawn on him. He knew that if no limitation was prescribed, they might be drawn, payable at sight, or on demand, or at any indefinite period—thus subjecting him from time to time during a whcle year, to a large and uncertain liability. It was reasonable, therefore, for him to

guard against such a consequence by limiting the time of payment. This he expected to accomplish, by specifying the time "*at ninety days.*" Although it is not declared whether ninety days after sight or after date were intended, yet I think the only fair and legitimate conclusion is, that he meant the former. By such a construction, he would secure a knowledge not only of the time of payment, but also of the amount to be paid. If on the contrary it should be held that the bills could be made payable at ninety days after date, he might be called on for payment on presentment, without any previous notice whatever—a construction which would virtually strike the words "at ninety days" out of the letter of credit. They would be ineffectual in securing any time for payment, and so far as I can discover entirely nugatory, in respect to the only motive there could be for inserting them.

It has been urged that the words being those of the defendant himself, must be taken most strongly against him. Conceding the position to be true, it does not follow that they are to be disregarded and treated as unmeaning, which I have before shown would be the consequence of declaring that drafts payable ninety days after date were intended. The case of *Parker* v. *Greele*, (2 *Wend.* 545; *S. C. in error,* 5 *id.* 414,) is not in conflict with the views above presented. Although a recovery was had on the notes sued on, which were drawn at four months after date, under an authority to draw "*at three and four months,*" without specifying whether after date or sight, yet the point now presented was not raised on the trial. The grounds taken against a recovery were, 1. That the letter did not in its terms amount to an acceptance; 2. If it did, such acceptance was conditional, and the plaintiff was bound to prove the terms of the condition and their fulfilment, to entitle him to recover; and 3. If the letter was an engagement to accept, it was to accept at three and four months, and the terms of the engagement should have been strictly pursued by drawing two bills of equal amount, one at three and the other at four months. The objections were all overruled by the circuit judge, and his decision was affirmed. The chancellor, in the discussion of the case in the

court of errors, expresses the opinion that an agreement to accept at three and four months, would be understood that length of time after presentment of the bill, and not after its date; but no other allusion was made to that circumstance.

If I am correct in the views above presented, it follows that the bill in question was not drawn in conformity with the letter of credit, and that the defendant was not liable on it. The evidence given of the acts of the parties to show their un- derstanding of the contract, could not alter its legal effect. But if it were admissible, it would not aid the defendant. There is nothing to show a ratification of this particular bill. The mere fact that the defendant accepted bills drawn by De Forest & Co., payable ninety days after date, does not show that they were drawn and accepted under the letter of credit.

In any view of the case, the judgment should be affirmed.

SPENCER, Senator. It appears to me that the supreme court were clearly right in holding that the letter of credit conferred an absolute authority upon De Forest & Co. to draw bills, and that it was an unconditional promise to accept within the mean- ing of the statute, (1 R. S. 768, § 8,) and that the only limitation was that no more than $3000 should be running and unpaid at any one time. This limitation was not exceeded by drawing the bill on which the suit was brought.

The only question which needs to be considered, is whether the bill was drawn in conformity to the letter of credit in respect to the time of credit? Whether "at ninety days," necessarily and in point of law, means "after sight," and not "after date." That it is not so expressed in terms, all will agree. If the pre- cise legal meaning of the terms be not fixed by law, then it seems to me that the intention and understanding of the parties to the agreement ought not to be overlooked or disregarded. This has been as clearly declared by the conduct of the parties to the agreement, as if it had been written in it. With a full knowledge of this understanding and practical construction, the

plaintiffs discounted this bill, and it seems to me that good faith now requires that the defendant should be held to what his conduct has again and again practically declared.

When the letter of credit was given, the defendant had a right to prescribe the terms in language as precise as he chose. If he left any point open and doubtful, the intendment should be against him. By not defining with precision to what he intended the ninety days to relate, it seems to me he left it to De Forest & Co. to consult their own convenience and pleasure whether they would draw "after sight," or "after date;" and that a bill drawn either way would be within the authority conferred. This view of the case is strengthened by the fact that the acceptances were given for the accommodation of the drawers, who were expected to provide the funds for their payment. It was therefore far more important to the drawers than to the acceptor to know the precise day on which each bill was payable. This could only be conveniently done by fixing a day certain for the payment of the bills.

The chief justice places his opinion upon the ground that the acceptor intended to secure himself a credit of ninety days, after learning that the bill was in existence, but that in the way this bill was drawn, he was not sure of obtaining the credit of a single day, as the holder was not bound to make presentment until the bill came to maturity. This is a difficulty he might have guarded against when he gave the letter of credit. But it is fair to suppose that he gave it with a full knowledge of the very general, if not universal custom of merchants, for the drawer to advise the drawee that he has drawn upon him; and also that it is a very general custom for country banks, when they discount paper payable in New-York, to forward it at an early day for collection to their corresponding banks in that city, as was done in every instance by these plaintiffs. With a knowledge of such custom, the defendant might very well give to the drawers the advantage of certainly knowing on what day their bills matured. It is well known that a vast many bills are drawn by commercial men in the country, upon their correspondents and consignees in the city, and often in anticipation of consignments, which

The Ulster County Bank *v.* McFarlan.

are discounted by the country banks before acceptance. These, for the convenience of discount, are more frequently drawn payable a given number of days "after date," than "after sight."

Since the argument of this cause, I have inquired of bankers and commercial men in the city of New-York, as to the prevailing method of drawing bills in the country, and how they would understand the authority given by the defendant to De Forest & Co., and have been informed by them that the bills are drawn in both forms at the pleasure of the drawers, and that according to their understanding, this letter of credit conferred authority to draw in either form.

It seems to me that the plain justice of the case is strongly with the plaintiffs, and that the law is in harmony with it. In my opinion, therefore, the judgment of the supreme court ought to be reversed and a new trial ordered.

TALCOTT, Senator. The letter of credit in question was clearly an unconditional promise to accept the bills of W. H. De Forest & Co., if drawn in conformity with its terms, and hence, as to such bills, was an actual acceptance within the meaning of the statute. (1 *R. S.* 768, § 8; *Bank of Michigan* v. *Ely*, 17 *Wend.* 508; *Greele* v. *Parker*, 5 *id.* 414.) The letter was to continue in force for one year from its date, and expressly authorized bills to be drawn from time to time, and for such amounts as the De Forests should require, subject only to the two restrictions contained in the letter, to wit, that they should be *at ninety days*, and that the whole amount running and unpaid, should not exceed $3000. The amount of unpaid bills, including the one in question, at the time the latter was drawn, having been within the required limit, it is of no consequence what number or amount of bills had been previously drawn, provided they were not then outstanding, or in the words of the letter, were not then "running and unpaid." The language of the letter is too plain to admit of a doubt that the object in limiting the credit to $3000, was to fix a sum, beyond which the defendant should at no one time be liable. In this respect, then, there was no violation of the provisions of the letter, and it only

remains to inquire whether the bill in question, which was made payable at ninety days *after date*, was in conformity with the authority to draw "at ninety days," or whether this authority required the bills to be drawn at ninety days *after sight*. The supreme court held the latter to be the true construction of the letter and decided the case on that ground. The argument on this point, in support of the judgment under review, is, that unless the bills drawn under the letter in question, are required to have been at *ninety days sight*, it might have happened that the writer of the letter would not have been advised of the existence of such bills until the time of payment had arrived, and might thus be compelled, virtually, to pay them *at sight*. As this might have been inconvenient to McFarlan, who gave the letter, the inference is deduced that he must have intended that the letter should receive such a construction as would give him ninety days time on the bills, after sight. To this it may be answered, that if such were really the defendant's original intention, he should have used language which would have expressed that intention to others, and have insured a like interpretation by them.

The language of the letter is elliptical, and it being customary, in commercial usage, to draw bills of exchange payable at specified times, after *date*, as well as after *sight*, the letter certainly carries on its face no intimation that bills of the latter description only were to be drawn under it. In such case, where the true import and meaning of a written instrument is doubtful, there is no rule of law which requires such a construction to be put upon it, as shall be most favorable to the interests, or even in accordance with the actual or presumed intention or interpretation of the party who uttered it; but on the contrary, the legal doctrine is well settled to be, that as to such an instrument—where the intention of the parties cannot be determined from its language, or "by the light of surrounding circumstances,"—it shall be construed most strongly against the person using the doubtful language, and in favor of him who has been misled, and has advanced his money upon it. In *Mason* v. *Pritchard*, (12 *East*, 227,) in construing a written instrument by which the

defendant agreed to guaranty the plaintiff for any goods he had or might supply his brother W. P. with to the amount of £100, the court held it to be a continuing guaranty, and said that "the words were to be taken as strongly against the party giving the guaranty as the sense of them would admit of."

In *Lawrence* v. *McCalmont*, (2 *How. S. C. Rep.* 450,) after referring to the case in 12 East, Judge Story uses the following language: "Indeed, if the language used be ambiguous, and admits of two fair interpretations, and the guarantee has advanced his money upon the faith of the interpretation most favorable to his rights, that interpretation will prevail in his favor; for it does not lie in the mouth of the guarantor to say that he may, without peril, scatter ambiguous words, by which the other party is misled to his injury." In *Hargreave* v. *Smee*, (6 *Bing.* 248,) Tindall, C. J. says, "there is no reason for putting on a guaranty a construction different from that which the court puts on any other instrument. With regard to other instruments, the rule is, that if the party executing them leaves any thing ambiguous in his expressions, such ambiguity must be taken most strongly against himself." (*See also to the same point, Throckmerton* v. *Tracy*, 1 *Plowd.* 156; *Bac. Ab. Covt. F; Munn* v. *Baker*, 2 *Stark.* 226; *Story on Cont.* §§ 258, 260, 261; *Walrath* v. *Thompson*, 4 *Hill*, 200.) If the doctrine of these cases be applied to the one in hand, I am unable to see how the judgment of the supreme court can be sustained. It follows from them, that whatever may have been the defendant's understanding of the letter, the language which he employed having been susceptible of two interpretations, neither of which would be strained or unreasonable, and the plaintiffs having purchased the bill in question in good faith, the proper inquiry is, which of these interpretations did *they* put upon the letter; and this being determined, fixes, I think, its legal construction as between these parties. Applying this test, the construction given by the plaintiffs undoubtedly was, that the letter authorized the bill as drawn; for otherwise the letter, upon the strength of which they discounted the bill, would not operate as a preacceptance, and would therefore be valueless to them, and leave them with-

The Ulster County Bank *v.* McFarlan.

out any claim upon the defendant until his actual acceptance, which in this case has never been given. The fact that the plaintiffs sent the bill to the defendant for acceptance, soon after they received it, is sufficiently accounted for by the necessity of having an acceptance on the face of the bill, to enable them to negotiate it to other parties.

Again, suppose the bill in question had been drawn in the precise language of the letter, "at ninety days," without inserting the word "date" or "sight," and then negotiated to the plaintiffs for value, (as was the case here,) on the day of its date, would it not have fallen due at the expiration of ninety days (with the days of grace,) from that time? By virtue of the letter, the bill would have been actually accepted at its date; the instrument would then have been perfect, and the contract complete to pay in ninety days; and it seems to me quite clear that the time named in the bill would have commenced running from that moment. If this be so, the bill in question was strictly within the letter of the authority under which it was drawn.

In every aspect of the case, I think the judgment of the supreme court should be reversed.

BARLOW and JOHNSON, Senators, also delivered written opinions in favor of reversal, upon the same grounds taken in the opinions of Senators Spencer and Talcott.

On the question being put, " Shall this judgment be reversed ?" the members of the court voted as follows:

*For reversal:* Senators BARLOW, BEERS, BURNHAM, DEYO, EMMONS, JOHNSON, SPENCER, TALCOTT and WILLIAMS—9.

*For affirmance:* THE PRESIDENT, and Senators DENNIS-TON, HAND, HARD, LOTT, MITCHELL, PORTER, PUTNAM, SAN FORD, J. B. SMITH, WHEELER and WRIGHT—12.

Judgment affirmed.