FletcheR, J.
The plaintiff, an inhabitant of Buffalo, New York, seeks in this action to recover of the defendant, a commission merchant of Boston, the payment of three drafts, drawn on the defendant by Hawkins, Austin, & Co., a mercantile firm doing business in Buffalo.
It appeared in the case, that, from the fall of the year 1847 to December, 1848, there had been extensive dealings between the firm of Hawkins, Austin, & Co. and the defendant; that Hawkins, Austin, & Co. had sent a large amount of property to the defendant, to be sold by him, and drawn drafts against such • property, and that the plaintiff had discounted drafts thus drawn on the defendant, for the amount of $6,000, which had been accepted and paid.
On December 1, 1848, the defendant wrote to Hawkins, Austin, & Co., in regard to the business between them, and. particularly as to the market for pork; and especially in regard to their buying and sending for sale dressed hogs. In relation to sending the hogs, the defendant, in this letter to Hawkins, Austin, & Co., says : “ It will be well to have them coming along in lots of twenty, thirty, or forty, and you may draw at ten or twelve days.”
*52 This authority is not exposed to the objection made by the defendant, that, if considered as an authority at all, it would be unlimited and unqualified; it was .limited to drawing against actual consignments of hogs. Nor was the authority on condition that the pork was bought at four cents. The defendant said he would not advise Hawkins, Austin, & Co. to pay over four cents.
In pursuance of the express authority given in this letter, Hawkins, Austin, & Co., on the 19th, 20th, and 23d of December, drew the three drafts in question in this suit. This letter was exhibited to the plaintiff, to show the authority of Hawkins, Austin, & Co. to draw: and, in reliance upon that authority, and the consequent engagement of the defendant to accept the bills, the plaintiff discounted the bills for Hawkins, Austin, & Co.
Each draft was drawn against a consignment of hogs to the defendant, according to the defendant’s direction ; and to each draft was attached a receipt on paper, showing that the hogs had actually been thus forwarded.
The defendant, in fact, received all the hogs thus forwarded and against which the drafts were drawn, and sold them and received the proceeds, but refused to accept the drafts. For this refusal of the defendant to accept the drafts, the plaintiff instituted, and now claims to maintain, this action.
It is clear that the defendant gave Hawkins, Austin, & Co. authority to draw on him, against the hogs which they might send to him. Hawkins, Austin, & Co. sent the hogs, and drew the drafts in question against them. The defendant’s letter, giving authority to draw on him, was shown to the plaintiff, and upon the strength of it the plaintiff discounted the drafts in question.
The question now is, whether the plaintiff can maintain this action against the defendant, for not accepting the drafts; giving authority to draw necessarily importing an engagement to accept.
1. The first ground taken by the defendant against the plaintiff’s right to recover is, that the legal title to the drafts *53 was in Janes, and parol evidence is not admissible to prove the contrary. The plaintiff did business under the name of the bank of Lake Erie, under the banking law of New York. Janes was the cashier of the bank. The bills were drawn payable to the order of Janes as cashier. Janes was merely the plaintiff’s agent; his agency appears on the face of the drafts; the money paid for the drafts was the plaintiff’s money, and the drafts belong to the plaintiff.
There can be no doubt whatever that it is competent for the plaintiff to show these facts, and to claim payment of the drafts as his own, and in his own name.
2. The defendant’s next objection is, that his promise to Hawkins, Austin, & Co. was not negotiable. This objection, to have any application to this case, must be understood to mean, that there is no privity of contract between the plaintiff and defendant, to enable the plaintiff to maintain this action. But that question is not now open to discussion in this commonwealth. It has been fully considered, discussed, and settled by the decisions of this court and the courts of the United States.
In Russell v. Wiggin, 2 Story, 213, the subject was most ably and elaborately discussed by Mr. Justice Story, and the English and American cases thoroughly examined and considered. In that case, a person who took bills drawn in pursuance of a letter of credit, given by the drawee to the drawer, maintained a suit on them in his own name against the drawee, for not accepting the bill.
In that case, there was a formal letter of credit. But the same principle upon which the plaintiff recovered in that case has been adopted in a case precisely like the present.
In Carnegie v. Morrison, 2 Met. 381, this same subject was very fully discussed and the authorities examined, by the chief justice of this court, in giving the opinion; and it was adjudged, in that case, that the holder of a bill might maintain an action in his own name against the drawee, who had given a letter of credit to another, authorizing the draft. This was also a case of a formal letter of credit.
But a very recent case in this court, Murdock v. Mills, *54 11 Met. 6, is precisely like the present case. In that case, there was only a letter addressed to a person, authorizing him to draw on the defendant. The party did draw, the plaintiff bought the bill, and brought a suit in his own name against the defendant, who gave the authority; precisely as in this case.
In deciding the case of Murdock v. Mills, the court say: “ It is now a well settled principle of American mercantile law, respecting bills of exchange, that when a party holds the written authority of another to draw bills on him, with a promise to accept them when so drawn, a third person, purchasing such bill for a valuable consideration, upon the faith of such written authority, can maintain an action against the writer in his' own name, upon the breach of such promise to accept.” This decision directly meets and completely settles this point in the present case, and leaves nothing open for discussion.
Though different views have been taken of the subject in England and New York, yet it is believed that the doctrine established by the decision above referred to is in perfect accordance with the general understanding of the mercantile community, and is essential to the transaction of mercantile business. In truth, it is difficult to see how business could be transacted by means of bills of exchange, if purchasers of bills would have no claim on drawees who had authorized them to be drawn.
It was said, in the argument for the defendant, that his letter to Hawkins, Austin, & Co. was confidential. But there is no evidence that it was confidential. It was a business letter, and Hawkins, Austin, and Co. were well authorized to make the use which they did make of it, to enable them to raise money on their drafts. Without such use, the authority given them to draw would have been of no value to them.
It abundantly appears, in the frequent applications of Hawkins, Austin, & Co. for another letter, with authority to draw to raise money at Patchins’s bank, that both parties well understood that an authority to draw would of course be used to raise money on the drafts.
*55 Some authorities were referred to by the defendant’s counsel, in regard to a promise to accept being treated as an acceptance. But that point is immaterial in the present case, as this suit is not on an acceptance but on a refusal to accept.
Another point taken by the defendant’s counsel was, that the authority to Hawkins, Austin, & Co. to draw' at ten or twelve days was, in legal effect, an authority only to draw at ten or twelve days after sight, and not after date, as they were in fact drawn.
This position is supported by the case of The Ulster County Bank v. McFarlan, 5 Hill, 432, and affirmed by the court of errors, 3 Denio, 553.
This decision is supported by no adjudged case. But in the case of Parker v. Greele, 2 Wend. 545, a recovery was had on bills which were drawn at four months after date, under an authority to draw at “ three and four months,” without specifying whether after date or sight. That case was severely contested; but this point was not raised, though the facts in that case presented the point as fully as it is presented in this case, or in the case of The Ulster County Bank v. McFarlan.
The decision of the supreme court, in The Ulster County Bank v. McFarlan, rested upon no authority, and was affirmed in the court of errors by twelve against nine.
The opinion of the supreme court was placed upon the ground that the drawee, by authorizing a draft at ninety days, intended to secure himself a credit of ninety days, after notice that the bill was drawn; but, if drawn ninety days after date, he might not have any time, as the holder might not present the bill till it came to maturity. The answer to that is, if he meant so he should have said so ; and, as he did not say so, there is nothing to show that he meant so, as it is as usual to draw after date as after sight.
In the present case, the defendant authorized Hawkins, Austin, & Co. to draw at ten or twelve days; he does not say after date or after sight. There is surely no rule of law, which says it shall be after sight. As the defendant did not *56 prescribe how the drafts should be in this particular, and as there is no rule of law which prescribes how they shall be in such case, and as it is common and usual to draw both ways, after date and after sight, it was clearly and necessarily left to the drawer to exercise his own discretion and consult his own convenience in this particular.
The drawee might very well leave it to the drawer to consult his own discretion and convenience, in drawing after date or sight, relying upon the well known general, if not universal, custom of merchants, for the drawer to advise the drawee that he has drawn upon him.
The drawer must also have well understood, that it would be most inconvenient for the drawee, in getting the drafts discounted, to draw them payable after date. The fact, that the drawer himself took no exception to the drafts,'on this account, is entitled to consideration, as showing his understanding of the authority given in this particular.
Where the true import and meaning of a written instrument is doubtful, and the intention of the parties cannot be determined from its language, the right doctrine is, that it shall be construed most strongly against the person using the doubtful language, and in favor of him who has been misled and advanced his money upon it. Mason v. Pritchard, 12 East, 227; Lawrence v. McCalmont, 2 How. 426, 450; Hargreave v. Smee, 6 Bing. 244; Story on Contracts, §§ 258, 260, 261; Walrath v. Thompson, 4 Hill, 200.
The plaintiff paid his money in good faith for those drafts, upon the authority given in the defendant’s letter; and there is no principle of law or equity upon which the defendant can defeat the plaintiff’s claim, because the drafts are drawn after date and not after sight; the defendant himself not having required or intimated, in any way, a wish to have them drawn in one way rather than another.
Besides, as these drafts were drawn expressly on property sent to the defendant, which he received and sold, and toot the proceeds, it is difficult to see how, in such case, he car rightfully refuse, on any ground, to accept and pay the drafts
Mr. Chitty says: “ It should seem that, when funds have *57 been remitted to a drawee, for the express purpose of providing for a bill drawn upon him, and he receives and retains the same without objection, or returning the amount, an engagement to accept may be implied.” Chitty on Bills, p. 281.
It was said further for the defendant, that the defendant’s promise to accept was conditional; to wit, that Hawkins, Austin, & Co. should first put him in funds, to the amount of at least $1,000. But there is no evidence to maintain this position in point of fact.
It was maintained, further, that the rights of the parties were to be determined according to the law of New York. But the letter of credit being drawn here, and the contract to accept and pay to be performed here, there can be no doubt that the case must be determined according to the laws of this commonwealth.
It was maintained, further, that Hawkins was not competent as a witness, on the ground of interest; that if the plaintiff did not prevail, he might have a suit against Hawkins, Austin, & Co., and recover damages on the drafts, according to the law of New York. But a merely possible result of that sort would create, at most, but too remote and contingent an interest to exclude the witness.
The conclusion is, that the plaintiff’s action is well maintained, and that he must have judgment.

Judgment for the plaintiff.