## Eades v. Muhlenberg County Savings Bank.

(Decided February · 12, 1914.)

### Appeal from Muhlenberg Circuit Court.

1. Bills and Notes—Note Payable to Cashier—Parties.—Where a bank discounts a note payable to its cashier, it may sue thereon in its own name, even though the note be not negotiable.

2. Bills and Notes—Note Payable to Cashier—Parties.—In an action by a bank on a note payable to its cashier and not endorsed or assigned by him, the failure to make the cashier a party is not prejudicial to the maker where the cashier testified that the note was discounted by the bank, as this fact will thereafter estop him from asserting any interest in the note.

3. Bills and Notes—Failure to Apply Deposit to Payment of Note—Release of Surety—Evidence.—Evidence of the failure of a bank to apply a deposit of the maker to the extinguishment of a note is properly rejected where there is no effort to show that the deposits were on hand at the maturity of the note, or that they were not specifically appropriated to some other purpose.

4. Bills and Notes—Surety—Release—Evidence—Sufficiency.—In an action on a note, where one of the makers defended on the ground that he was a surety and was released because the time of payment was extended for a valuable consideration without his knowledge or consent, and that certain collateral was also released, evidence examined and held sufficient to sustain a finding in favor of plaintiff.

WILLIS & MEREDITH for appellant.

NEWTON BELCHER AND BELCHER & SPARKS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On July 3, 1908, John B. Brasher, The Brasher Coal Company, Andrew Hogg and William Eades executed and delivered to Thomas E. Sumner, cashier, their certain promissory note in the sum of $6,343.50, payable four months from date. Thomas E. Sumner was the cashier of the Muhlenberg County Savings Bank. Cer-

tain payments were made on the note, leaving a balance due of $2,500. The bank brought this action against the makers to recover on the note. William Eades alone defended. A trial before a jury resulted in a verdict and judgment in favor of plaintiff for the balance due. Eades appeals.

Among the defenses interposed by the defendant Eades were: (1) Plaintiff's want of capacity to sue, and defect in parties; (2) defendant was a surety, and the time for payment of the note was extended for valuable consideration without the knowledge or consent of the defendant; (3) release of collateral pledged to secure the note sued on; (4) want of notice of dishonor; (5) failure to sue in a reasonable time. Just before going into trial defendant filed an amended answer pleading in substance that after the maturity of the note plaintiff had in its possession notes, moneys and other things of greater value than the balance due on the note sued on, which belonged to the maker, John B. Brasher, and that the plaintiff surrendered and returned to Brasher said notes and other property; that defendant Eades was only an accommodation endorser, and that he was released from liability by reason of the failure of plaintiff to apply the property on hand to the payment of the note.

The facts developed on the trial are as follows:

Thomas E. Sumner testified that he was cashier of plaintiff bank. Did not know who wrote the note. It was presented to him by Eades and Brasher. The bank discounted the note and Eades received the proceeds, amounting to $5,000. The proceeds were used to discharge a former note executed to the bank by Brasher and Eades. No extension of the note was ever made. At one time Brasher left a note for $10,000 with the bank which he wanted the bank to discount. The directors refused to approve the loan, and the note was returned to Brasher. This note was never delivered to the bank to be used as collateral security for the note sued on. The former note, which was paid off by the proceeds of the note sued on, was executed to the bank by Brasher and Eades. Witness did not know that Eades was a mere surety on that note or on the note sued on. After maturity of the note sued on he frequently urged Eades to pay it, but Eades would put him off from time to time. On one occasion Eades wrote him a letter advising him that it was best not to sue, although the bank could take

such action as it desired.  J. L. Rogers, one of the directors, testified that a $10,000 note was submitted for discount, but the directors regarded it as worthless and declined to make the loan.

Defendant Eades testified that he got the proceeds of the note, but only in an indirect way.  The first note executed by him and Brasher to the bank for $5,000 was to enable Brasher to get $5,000 to pay part of the purchase price of a certain mine which Brasher had purchased from him.  Brasher arranged with the bank for the loan.  He had nothing to do with the arrangement except to sign the note for Brasher's accommodation. Never agreed to any extension of the note.  He regarded the $10,000 note as good for the sum of $2,500.  After the $10,000 note was surrendered he wrote to the president, his brother-in-law, telling him he would not longer be liable on the note sued on.  On cross-examination witness stated that when the first note was executed by him and Brasher, Brasher got the $5,000 and paid it to him. Sumner talked to him about the note in question while the bank had the $10,000 note.  Eades was a stockholder and director in the bank.  J. W. Lam, defendant's brother-in-law, who was the president of the bank, testified that he received a letter from the defendant that he would not be liable any longer on the note in question, because the bank had surrendered the $10,000 note. Never told the directors about it until after suit was filed. Did not even know that Mr. Eades was on Brasher's note.

In rebuttal Thomas E. Sumner testified that Eades never at any time notified him that he was surety on the note in question, or that he would not stand good on the note any longer.  On the contrary, Eades and Brasher both came to the bank together to arrange for the money.

The court instructed the jury in substance to find for the plaintiff unless they believed from the evidence that defendant Eades was a surety on the note and that the bank or its officers knew this fact, and either without his knowledge or consent extended for a valuable consideration the time of payment, or held the $10,000 note as collateral security and surrendered it to Brasher.

Defendant insists that as the note sued on is not negotiable, section 42 of the Negotiable Instrument Act, providing that where an instrument is drawn or endorsed to a person as cashier or other fiscal officer of a bank or

corporation, it is deemed *prima facie* to be payable to the
bank or corporation of which he is such officer, does not
apply. It may be conceded that the note being payable
to order or to bearer is not negotiable, and as the Nego-
tiable Instrument Act applies only to negotiable instru-
ments, the section referred to does not apply. Inde-
pendently, however, of the provision in question, it has
been uniformly held by the courts that a note payable to
the cashier of a bank is payable to the bank, and it may
sue thereon as payee. Nave v. Hadley, 74 Ind., 155; Bar-
ney v. Newcomb, 63 Mass., 46; Smith v. Branch Bank of
Mobile, 5 Ala., 486; Commercial Bank v. French, 38
Mass., 484; Wright v. Boyd (N. Y.), 3 Barb., 523. In
First National Bank v. Hall, 44 N. Y., 395, it is held that
a note made payable to a certain person as cashier need
not be endorsed by the cashier to give the bank of which
he is cashier a right to sue on the instrument as payee.

The evidence conclusively shows that Sumner was the
bank's cashier, and that for and on behalf of the bank
he as cashier discounted the note. The bank was, there-
fore, the owner and holder of the note, and had the right
to sue in its own name. Moreover, even if Sumner was
a necessary party the failure of the plaintiff to make
him a party was not prejudicial to defendant. Sumner
having testified that he was cashier of the bank, and that
the bank had discounted the note, he would necessarily
be estopped from thereafter asserting any interest in
the note.

Another error relied on is the rejection of the follow-
ing evidence:

"Q. In the meantime and after this note was exe-
cuted, state whether or not Brasher was operating a mine
in this county and did business at that bank?

"A. Yes, sir, he operated the Woodson mine.

"Q. You know whether he had any cash balance to
his credit during that time?

"Objected to—sustained, to which deft excepted.
Thereupon defendant avowed that if witness were per-
mitted to answer the preceding question he would state
that Brasher had sufficient funds on deposit in the bank
after this note became due to pay said note.

"Q. You know whether or not he did have any cash
to his credit in the bank?

"A. No, sir, I don't remember after examining the books, I think he did, but I am not sure.

"Objected to—sustained, to which defendant excepted. The above objection is sustained as to what he thinks about it."

It will be observed that witness was asked the question if after the note was executed Brasher was operating a mine and did a banking business with plaintiff. Witness was then asked if Brasher had a balance to his credit during that time. The question included any cash balance to Brasher's credit after the execution of the note and before its maturity, as well as cash balances after its maturity. The avowal was sufficient to show cash balances only after the maturity of the note, but when the question was again repeated to the witness he showed very plainly that he had no knowledge on the subject, but only thought Brasher had a balance to his credit, and was not sure of this. Moreover, there was no effort to show the precise state of Brasher's account, or that there was any cash balance on hand at the maturity of the note which had not been specifically appropriated to some other purpose. While it is true that where a bank is the holder of a note payable at the bank, and upon its maturity the maker has a cash deposit in the bank sufficient to pay it, not specially applicable to a particular purpose, the bank is bound to charge the amount of the note against the deposit, and its failure to do so will discharge an endorser or surety, German National Bank v. Foreman, 138 Pa. St., 474, 21 Am. St. Rep., 908, it is also well settled that the deposit must be sufficient at the time of the maturity of the note, and must not have been previously appropriated to any other purpose. Subsequent deposits will not raise the duty. Peoples Bank v. Legrand, 103 Pa. St., 309, 49 Am. Rep., 126; First National Bank of Lockhaven v. Emil Peltz, 176 Pa., 513, 36 L. R. A., 832. As before stated, there was no effort in this case to show the state of Brasher's account at the time of the maturity of the note, or to show that any deposit which he may have had on hand was not appropriated for a different purpose. Under these circumstances, the court did not err in rejecting the evidence offered.

While the instructions are criticised on account of their length, we think on the whole they fairly presented the issue to the jury.

It cannot be said that the verdict is flagrantly against the evidence. The decided weight of the evidence is to the effect that the bank did not know that defendant was a mere surety, and that no extension of the note was made. The evidence further shows that the $10,000 note was not accepted as collateral, but was merely submitted to the bank for discount. Having obtained possession of the note for this particular purpose, it had no right to retain it as collateral for the note in question. A surrender of the note under these circumstances did not release defendant, even if he was a surety on the note and the bank knew this fact.

Judgment affirmed.