By the Court,

Nelson, Ch. J.
It is objected that the acceptance of the defendant, under the circumstances of the case, is not within the provisions of the revised statutes, however obligatory it may be upon the principles of the commercial law. The provisions of the statute (1 R. S. 768), are as follows: § 6. No person within this state, shall be charged, as an acceptor on a bill of exchange, unless his acceptance shall be in writing, signed by himself or his lawful agent. § 7. If such acceptance be written on a 'paper other than the bill, it shall not bind the acceptor except in favor of a person to *288 whom such acceptance shall have been shoim, and who, on the faith thereof, shall have received the bill for a. valuable consideration. § 8. An unconditional promise, in writing, to accept a bill before it is drawn, shall be deemed an actual acceptance in favor of every person who, upon the faith thereof shall have received, the bill for a valuable consideration. A brief recurrence to the law as it stood in this state before the adoption of these provisions, will aid in comprehending their object and effect. It was settled, I. that a parol promise to accept a bill already drawn, was valid and binding, and amounted to an actual acceptance; and 2. that a. parol promise to accept a future bill, or one not in existence, was not binding, unless the bill was taken by the bolder upon the faith and credit of such promise. If it was so taken, then it was binding and amounted to an actual acceptance according to some of the cases (1 Holt, 181; 2 Kent’s Comm. 85; 12 Wendell, 598). There are other authorities which require the promise "to be iii writing. Now by the revised statutes, no person, within this state, can be charged as an acceptor of a bill, unless the acceptance be in writing, signed by himself or his agent; and if such acceptance be in writing, but not on the bill, still the party is not charged, unless the fact be disclosed to the person taking it, and he. on the faith of such acceptance, pay a valuable consideration for the same. The . acceptance here referred to relates to a bill already drawn.
By §8, an unqualified promise in writing to accept a bill to be thereafter drawn-, is deemed an actual acceptance in favor of any one who upon [511] the faith of such promises takes it for a valuable consideration. There is some difference in the phraseology of § 7 and § 8, in respect to the circumstances under which the credit is to be given to the promise to accept. The language of the former, is “ in favor of a person to whom such acceptance shall have been shown, and who on the faith thereof,” &c., whereas, the 8th section contains only the latter branch of the sentence; the other was in the section as reported by the revisors, but was subsequently stricken out. No reason can be perceived for a distinction in this respect between the two cases, and we do not believe that any was intended by the legislature; and that the difference in the phraseology is altogether accidental. It can be of no possible consequence to the acceptors in what mode the holder comes to the knowledge of the acceptance, whether by inspection or by oral communication: it is a matter that can only concern the latter. If he act upon the representation of a third person, he incurs the risk of being imposed upon, as he must, as to the genuineness of the writing upon an inspection. The language, “shall have been shown,” means nothing more than to express the idea that the holder must know of the acceptance; this is, indeed, the only effect of it. All this is undoubtedly implied in the next sentence, and the clause, therefore, might as well have been omitted altogether, as it is in the next section. In Pierson v. Dunlop (Cowper, 571), the first case in which this doctrine is stated, Lord Mansfield remarked: “It has been truly said, as a general rule, that the mere answer of a merchant to the drawer of a bill, saying he will duly honor it, is no acceptance, unless accompanied with circumstances which may induce a third person to take the bill by endorsement; but if there are any such circumstances it may amount to an acceptance,” &c. In Mason v. Hunt (Doug. 299), Lord Mansfield used language from which, probably, the phraseology of the statute was taken; but it is manifest he intended to do no rriore than repeat the principle he had before stated in Pierson v. Dunlop. In Clarke v. Cock (4 East, 57), this very objection was taken by Gibbs, p. 67, namely, that the letter, itself, ought to have [512] been shown, and not merely the purport of it given; but it was disregarded by all the judges. The communication oí the fact of the promise was deemed the material circumstance.
Now it must be conceded in this case, that the promise to accept is in writing, *289 and, in my judgment, it is an unqualified promise. “ If you want more funds, you can make drafts on me, &c., to the amount of $10,000.” Who was to determine whether more funds were wanted? undoubtedly, Beach & Hudson. The question was referred to their sole discretion; and when decided and the drafts drawn, the obligation to accept became imperative. As the discretion to draw was thus left solely with them, the terms of the letter are equivalent to an absolute promise to accept whenever they drew upon him in the manner specified. It is not for him to set up an abuse of this discretion to avoid the obligation, unless it be brought home to the plaintiffs, of which there is no pretence.
Did the plaintiffs receive the bills upon the faith of the defendant’s promise to accept them, and for a valuable consideration? It must be conceded, that •most, if not all the money now relied on as the consideration for these bills, was actually received by the agents, and therefore paid to them by the bank, before the written authority to draw, and promise to accept was given: and hence, it can not be said, strictly speaking, that it was advanced upon the faith of this promise. So much must be admitted. But as we have already shown, the agents possessed authority to raise funds for the purchase of the wheat upon the defendant’s paper, and in this case, no doubt could be entertained of his liability as drawer, if he had been so charged. It is true, that regularly, the drafts should have been drawn in the name of the principal, but Hudson’s practice was uniformly otherwise, and was sanctioned by the defendant. He can not be permitted to avail himself of that objection. It may then be confidently said, that the money when taken from the packages by Hudson, operated as a loan to, or charge upon Ely, the principal; that the debt was liis; and if no drafts had been given he would have been holden to discharge it, upon the plainest law applicable to the relation [513] of principal and agent. Now assuming the advance to have stood on this footing on the 18th January, when the written authority to draw the bill was given, and the drafts in question were subsequently drawn; is not the taking-of them by the plaintiffs for this debt, a taking, upon the faith of the promise to accept and for a valuable consideration? A man’s own debt or account owing by him, is certainly a good consideration for the draft of his authorized agent, and there can be no doubt of the fact that the paper was received on t.he credit of the engagement of Ely to accept or which is the same thing, in judgment of law, upon the authority to draw upon him. Here, then, are the three ingredients required by the statute; 1. A written promise to accept, 2. Taking the drafts upon the faith of it; and 3. A valuable consideration, to wit, the debt existing against the defendant, createcf by an agent with full authority.
It is to be regretted the attorney had not inserted the common counts in his declaration, and then the question upon the statute might have been avoided; the defendant would have been charged as drawer of the.drafts in question.
Prudence would, perhaps, require that the pleadings should he amended in this particular.
Motion to set aside the report of referees granted; costs to abide the event.