By the Court, Bronson, J.
The letter of credit conferred an absolute authority upon Deforest & Co. to draw bills, and must, I think, be regarded as an tmconditional promise to accept, within the meaning of the statute. (1 R. S. 768, § 8; Bank of Michigan v. Ely, 17 Wend. 508. And see Parker v. Greele, 2 id. 545, and S. C. in error, 5 id. 414.) These cases show also, that the written promise to accept need not contain a particular description or identification of the bill to be drawn. It is enough that it be drawn in pursuance of the authority. The plaintiffs received and discounted the bill upon the faith of the letter, and if it was drawn in pursuance of the authority, the judge was right in holding that there was a sufficient acceptance.
Although McFarlan had already accepted and paid bills drawn under the letter to the amount of three thousand dollars and upwards, “ the whole amount running and unpaid” at any one. time did not exceed that sum; and this was, I think, *435 the only limit which he fixed to the general authority conferred on Deforest <fc Co. to draw bills. The words are—“I hereby authorize you to draw on me at ninety days from time to time for such apiounts as you may require, provided that the whole amount running and unpaid shall not' exceed three thousand dollars.” And the letter is to continue binding for one year. The counsel for McFarlan reads this just as though the words “ running and unpaid” were stricken out, and thus limits the authority to the drawing of bills to an amount not exceeding three thousand dollars in the whole. But we must look at the entire instrument, and so construe it as to give effect, if possible, to every word which it contains. The authority is to draw “ from time to time.” and “ for such amounts as you may require ;” and the only limitation is, that the whole amount of outstanding, or “running and unpaid” bills, so drawn “ from time to time,” shall not exceed three thousand dollars. The amount of bills which had come to maturity and been paid before this bill was drawn was a matter of no consequence. The only proper inquiry was, what amount was then outstanding.
It is possible that McFarlan supposed he could only be made liable under the letter for three thousand dollars in the whole. But if,such was his intention, he has been unfortunate in the choice of words to express his meaning.
The only remaining inquiry is, whether the bill was drawn in conformity to the letter of credit; and here I think the judge erred. The authority is, “ to draw on me at ninety days.” The bill was made payable “ ninety days after date.” instead of so many days sight. I think McFarlan intended to secure himself a credit of ninety days after learning that, a bill was in existence. But in the way this bill was drawn he was not sure of obtaining the credit of a single day. The holder was not bound to make presentment until the bill came to maturity, and thus the drawee might be required to pay at the very moment when ho first learned that a bill had been drawn.. If we hold this bill to be within the authority, the words “ninety days” in the letter are of no practical importance. I think the bill should have been drawn at ninety days sight; and such was the view *436 taken of the question by the chancellor in Greele v. Parker, (5 Wend. 414, 418.) It is true that a majority of the court of errors did not concur with the chancellor in the disposition which was made of that. case. But this question was not involved in the decision. The point decided was, that ah authority to draw at three and four months was well executed by a bill drawn at four months, or the longest period. The question whether the bill should not have been made payable at so long a time, after sight, instead of date, was not raised on the trial, and could not, therefore, be decided either by this court or the court of errors. (2 Wend. 545.) The opinion of the chancellor upon this point yas not controverted by any other member of the court, and although it is but a dictum, it fully accords with my own judgment. The bill was not drawn in-pursuance of,the authority.
But it is said that McFarlan was estopped from putting. |his construction upon the letter of credit, because, he had accepted a bill drawn under' the letter, which was made payable at “ ninety days after date.” It would be giving a new application to an estoppel in pais, to hold that it may govern the construction, o.r qontrol the legal effect of a written instrument. But ijf such a doctrine can be maintained, there was nothing like ail. estoppel in the case. McFarlan might, accept bills drawn by Deforest & Co., whether they were in conformity to the authority or not, or although they had been drawn without the shadow of an authority. The actual acceptance of the bill produced did not, therefore, furnish any evidence that McFarlan deemed it such ,a bill as he was bound by the letter of credit to pay. Before the plaintiffs can make ou| any thing like an estoppql upon this question, they must show a "plain and unequivocal admission on the part of McFarlan that a bill drawn at so many days after date was within the . letter of credit.(a)
*437 We think the bill was not drawn in pursuance of the aii: thority, and as to the defendant McFarlan there must be a new trial.
Ordered accordingly.

 Even then, the admission would only go to the construction or legal effect of the letter, and therefore ought not to operate, (See Boston Hat Manufactory v. Messinger, 2 Pick. 223; Hamilton v. Neel, 7 Watts' Rep. 517.; Cowen & Hill’s Notes to Phil. Ev. 199, 211, 212.)