By the Court.
Woodruff, J.
—The draft in question was in form a bill of exchange. It was an unconditional order upon the. defendants, to pay a sum certain therein named to the order of the payee.
Although the account to which it should be charged was mentioned, it was not, by its terms, directed to be paid out of a particular fund. Had it been accepted, it was due immediately, whether the cotton to account of which it was to be charged had been sold or not. Its terms contemplate an advance upon the shipment of cotton, or are a mere designation of the account which should form the consideration of the acceptance and payment as between the drawers and the drawees; and had the defendants accepted it unconditionally, they must have paid it whether the cotton was sold or not, and whether the proceeds of the cotton were more or less than the amount of the draft.
*512 The draft is therefore, on its face, within the express provisions of our statute, which declares that: “ § 6. Ho person shall be charged as acceptor on a bill of exchange, unless his acceptance shall be in writing. § 7. If such acceptance be written on a paper other than the bill, it shall not bind the acceptor, except in favor of a person to whom such acceptance shall have been shown, and who, on the faith thereof, shall have received the bill for a valuable consideration. § 8. An unconditional promise in writing to accept a bill before it is drawn, shall be deemed an actual acceptance in favor of every person who,' upon the faith thereof, shall have received the bill for a valuable consideration.” (1 Revised Statutes, 768.)
It has been held that, under the seventh section, it is not necessary that he who takes a bill on the faith of a written acceptance on another paper should actually see such acceptance, it is enough that he .has knowledge of such acceptance, and receives the bill on the faith thereof. (Bank of Michigan v. Ely, 17 Wend., 508.)
The plaintiff was not shown to have had any knowledge of the defendants’ letter to Strippleman & Boyce prior to January, 1854. He cannot, therefore, claim that prior to that time he received the bill with knowledge of any written acceptance, and on the faith thereof.
He cannot claim to hold the defendants as acceptors of a bill of exchange upon a title, to the bill, acquired on the 10th of January, 1854, because the proceeds of the cotton, out of which the defendants promised to honor the draft, had already been appropriated to other purposes by direction of Strippleman & Boyce.
There never was an unconditional promise in writing to accept the bill, either before it was drawn or afterwards. The promise made by the defendants’ clerk, both by the written letter and the verbal assurance, was that the draft would be paid out of the proceeds of the cotton.
If, therefore, the plaintiff is in no other position than that of payee of a bill of exchange, relying upon the defendants’ promise to pay it, he is not entitled to recover. He has no acceptance, valid as such, under our statute, and the mere drawing and delivery of the draft gave him no title to maintain an *513 action against the defendants, not only because before the bill was delivered to him, the funds were otherwise appropriated, with the drawer’s assent, but also because the drawing and delivery of a bill of exchange is no assignment or appropriation of the funds in the hands of the drawee, entitling the payee to maintain an action against him therefor. (11 Paige, 612; 5 Hill, 413, affirmed, 7 id., 577; 3 Comst., 251; id., 115; 1 Seld., 530; 2 id., 417.)
But we think that the judgment must be sustained upon another view of the relation of the parties to the transaction.
And, preliminarily, it is proper to observe that the evidence was sufficient to establish, prima fade, the authority of the defendants’ clerk and bookkeeper to do and write what they did.
First, as to the letter to Strippleman & Boyce. The clerk by whom it was written had charge of the defendants’ correspondence, and had a general authority to write letters, and a copy of the letter was retained. It may be reasonably presumed that the copy would and did fall under the observation of the defendants, and that it was not disapproved.
Proof of such general authority was, we think, sufficient to devolve on the defendants the duty of showing that the letter was not within the scope of the powers of the clerk. And, not having shown this, the proof in this respect is such that it was rightly held that that letter should have the same operation as if written by one of the defendants in person.
Second, as to the oral promise to the plaintiff. The conversation was in the defendants’ counting-room; one of the defendants was present; the letter of Strippleman & Boyce to the plaintiff, was shown to that defendant and he read it and handed it to Mr. Mills. He may be reasonably understood by this act to refer the subject to Mr. Mills to make a reply. Hay more. He was present during the interview and may be taken to have heard the conversation—both the application made and Mr. Mills’ reply thereto—and expressed no dissent. The promise of Mr.. Milk on that occasion must therefore we think be taken as the defendant’s promise.
And this view both of the written letter and of the oral promise involving the question of authority as a mere question of fact, may properly be regarded as strengthened by the circum *514 stance that the defendant Edgerton though examined as a witness does not deny the authority of his clerk to write the letter, nor deny that he was present, heard the conversation and. sanctioned the oral promise made by the bookkeeper Mr. Mills to the plaintiff’s clerk.
The case then stands thus, Strippleman & Boyce sent to the defendants cotton to be sold, with notice that $500 was to be paid when the cotton was sold, to the plaintiff on their draft. The defendants wrote to Strippleman & Boyce promising that their draft in favor of the plaintiff “shall be honored from the proceeds of the cotton.”
Strippleman & Boyce at the same time notify the plaintiff that they inclose a draft on the defendants, for $500 to be credited on their note and upon the exhibition of that letter and with knowledge of the omission to inclose the draft, the defendants promise to pay the draft out of the proceeds of the cotton when sold.
After all this has transpired, the defendants receive the cotton and sell it, and it produces a net amount more than sufficient to pay the draft.
We think that the moment the cotton came to the defendants’ hands and was by them received, under the instructions of the consignors, it was held by them under an express obligation to sell it, and hold $500 of the proceeds for the use of the plaintiff. The fund had, impressed upon it, while it consisted of cotton itself and from the moment the bill of lading was forwarded by Strippleman & Boyce, a trust in favor of the plaintiff which the defendants when they accepted the consignment undertook to execute and promised both Strippleman & Boyce and the plaintiff they would execute.
The shipment of the cotton and remittance of the bill of lading were a sufficient consideration for their promise to pay $500 of the proceeds to the plaintiff. The plaintiff being a creditor of Strippleman & Boyce, had an interest in that promise from the moment he received notice and consented to the provision thus made for his benefit; and the defendants promised him that those proceeds should to the extent of that $500, be applied to his benefit So that both Strippleman & Boyce and the plaintiff had an interest that the cotton should be sold, and $500 of the *515 proceeds be paid on account of the indebtedness of Strippleman & Boyce to the plaintiff. The cotton was appropriated by the consignors and received by the defendants for that special designated purpose. The promise of the defendants and their receipt and sale of the cotton, completed the transaction and gave the plaintiff a cause of action which was not subject to be defeated or released by any subsequent acts of Strippleman & Boyce. (Neilson v. Blight, 1 John. Ca., 205.)
It is doubtless true that before the plaintiff could recover the money he must produce the draft, or show that it was drawn according to the intention of the parties, and lost in the transmission or otherwise. The draft was intended as a voucher between the parties, and the defendants’ promise was not that they would pay whether there was such a draft drawn by Strippleman & Boyce or not. Had it turned out that Strippleman & Boyce had drawn no draft, the case would have been quite different.
But we think that the circumstances that, through oversight the drawers neglected to inclose the draft in the letter, and that some months elapsed before it was found and forwarded, did not warrant the defendants in appropriating the proceeds of the cotton, without notice to the plaintiff to other purposes, in contravention of their agreement. These views are, we think, sustained by Morton v. Naylor (1 Hill, 583), and the cases cited.
There is some variance in the description of the plaintiff in the various letters. Once he is described as A. H. Lowery & Co., once as Gentry & Lowery, and again as A. H. Lowery. There was no such firm as A. H. Lowery & Go., nor Gentry & Lowery (Gentry being merely a clerk of the plaintiff.) The plaintiff was in fact the creditor of Strippleman & Boyce, for whom they intended to provide. No one was misled or deceived by the misdescription, and no one can be prejudiced by disregarding it. It has no effect upon the rights of the parties.
The referee erred in receiving in evidence a letter written by Strippleman & Boyce to the plaintiff without date but proved to have been signed by Strippleman. It is marked Exhibit D. That letter was not competent evidence against the defendants for any purpose. It is the mere statement of Strippleman out of Court, without oath. It was no part of the res gestee, and was *516 never the basis of any act of the defendants. It should have been rejected, and if we could see that its reception by the referee could possibly have affected the result, we should be compelled to reverse the judgment and grant a new trial. But if we can say it is clear that by legal necessity it could do no injury, the error committed does not require us to grant a new trial.
In the letter it is stated that the draft is inclosed; that it was mislaid, and by the exertions of Mr. Gentry found; the hope is expressed that the defendants will forthwith pay the amount “ as they have the proceeds of the 24 bales of cotton in their hands.”
If we are right in our views of the defendants’ liability, it was wholly immaterial whether the proceeds still remained in their hands or not; if they were there the defendants were liable; if they had been appropriated to some other purpose, still they are liable. We cannot therefore discover that any, even the least possible injury could have been caused by this error of the referee. (Forrest v. Forrest, 6 Duer, 145; 1 Comst., 519; 13 Barb., 42; 9 id., 625; 6 Hill, 292; 19 Wend,, 232; 3 Hill, 194; 16 J. R., 90; 3 Cow., 612.)
Our conclusion is that the judgment should be affirmed.
Judgment affirmed, with costs.