# THE MERCHANTS' BANK OF CANADA, Respondent, *v.* ALFRED H. GRISWOLD, Appellant.

*Authority to make drafts — how signed by agent — duty of payee to ascertain the necessity for — when acceptance not necessary to bind drawee — Usury — by what law governed, where no place of payment is named.*

The defendant, a resident of this State, by a written instrument, authorized one Loveland, as his agent, to make drafts on him from time to time as might be necessary, to purchase lumber to be consigned to a person therein named. *Held,* that it was not necessary that the drafts drawn by Loveland thereunder should be signed by him "as agent," so long as the fact of his agency was known to the party discounting them, and he acted upon the faith of it.

*Semble,* that the latter was not bound to ascertain whether the moneys were needed to purchase lumber, nor whether such lumber was forwarded to the consignee named in the said instrument.

*Held* further, that under the authority given to Loveland the defendant was in effect himself the borrower of the money raised by drafts drawn by Loveland, and that he was liable thereon, although the drafts had never been accepted by him.

In pursuance of the said authority, Loveland, while in Canada, drew a draft upon the defendant, and the same was discounted for him by a Canadian corporation, no place of payment being named in the draft. In an action upon the draft the defendant claimed that it was void, because discounted at a usurious rate of interest. *Held,* that the validity of the draft was to be determined by the usury laws of Canada and not by those of this State.

Appeal from a judgment in favor of the plaintiff, entered upon a verdict directed by the court.

This was an action to recover the amount of two bills of exchange, drawn by one Horace Loveland in his own name, on the defendant, who resided at Whitehall in the county of Washington, for $1,000 each, and discounted by the plaintiff, a banking corporation duly organized under the laws of the Dominion of Canada.

The complaint alleged that the defendant authorized Loveland, as his agent, to draw the bills in question by a written instrument, relying on it as amounting to an agreement to accept. The following is a copy of said instrument:

Whitehall, N. Y., *February* 28, 1874.

*To all whom it may concern :*

This is to certify that I hereby authorize Horace Loveland, as my agent, to make drafts on me from time to time as may be

necessary for the purchase of lumber for my account, and to consign the same to the care of P. W. Scribner & Co., Whitehall, N. Y.

A. H. GRISWOLD.

The defendant denied all the allegations of the complaint except the making of the written instrument, and alleged that the bills were usuriously discounted by the plaintiff.

On the trial the court ruled with the plaintiff, holding all the questions to be merely questions of law, and that the plaintiff was entitled to recover, and directed a verdict accordingly. .

The defendant having duly excepted brought an appeal to the General Term from the judgment.

*James Gibson,* for the appellant. The power given to Loveland was not exercised by his drawing in his own name. (*Minard* v. *Mead,* 7 Wend., 68; Chitty on Bills, 37, note 36; *Pentz* v. *Staunton,* 10 Wend., 271; *Spencer* v. *Field,* id., 87.) The authority was special and must be specially pursued. (*Battey* v. *Carswell,* 2 Johns. R., 48; *Munn* v. *Com. Co.,* 15 id., 44, 54; *Cuyler* v. *Merrifield,* 12 S. C. R., 559; *Nixon* v. *Palmer,* 4 Seld., 400, 401; *New York and Virginia S. S. Bank* v. *Gibson,* 5 Duer, 574; *Scrippenrich* v. *Bayard,* 1 Peters, 264.) The complaint should have alleged that the bills in question were drawn for the purchase of lumber, were so applied, and the lumber shipped as required by the defendant's agreement. The plaintiffs were bound to examine the agreement and ascertain the extent of Loveland's authority, and see, as to the bills they discounted, that he acted within his authority. (*Nixon* v. *Palmer,* 4 Seld., 400, 401; *Buck* v. *Vanderbilt,* 1 Sandf., 265; *Delafield* v. *Illinois,* 26 Wend., 192; *Andrews* v. *Kneeland,* 6 Cow., 354; Story on Agency, § 133.) The drafts were drawn in Canada on a resident of this State, and by law payable at his residence in Whitehall. The alleged letter of credit was made, and was to be performed within this State. The validity of a promise to accept a bill is governed by the law of the place where it is to be accepted and paid. (*Boice* v. *Edwards,* 4 Peters, 41; *Musson* v. *Luke,* 4 How. [U. S.], 278.) And our statute prescribing the rules of validity, furnishes the law controlling the obligation. (*New York, etc.,* v. *Gibson,* 5 Duer, 584; *Bright* v. *Judson,* 47 Barb., 29; *Lee* v. *Selleck,* 33 N. Y., 617, 618; *Slocum*

v. *Pomeroy*, 6 Cranch, 221; *Barker* v. *Havens*, 17 Johns., 234; 2 Kent's Com., 460, note 1, and 461, note 7; Story on Conflict of Law, §§ 291, 306; *Scofield* v. *Day*, 20 Johns., 102.) These decisions are placed on the ground that the law of the place where the contract is to be performed, determines its validity and construction. (*Lee* v. *Selleck*, 33 N. Y., 615; S. C., 32 Barb., 522; *Bright* v. *Judson*, 47 Barb., 36; *Cooper* v. *Waldegrave*, 2 Beavan, 282; *Thompson* v. *Ketchum*, 4 Johns., 285; *Panning* v. *Consequa*, 17 id., 518; *Burckle* v. *Eckhart*, 3 Com., 132; *Jewell* v. *Wright*, 30 N. Y., 264.) And by the laws of that place it may be defeated. (2 Kent's Com. [5th ed.], 590, note *a;* id., 464, note *a*, and cases cited; *Roquett* v. *Overman*, 13 Albany Law Jour., 445; *Musson* v. *Luke*, 4 How. [U. S.], 278, 279; *Andrews* v. *Heriot*, 4 Cow., 511–513 in note; *Dewitt* v. *Brisban*, 16 N. Y., 514.) The plaintiffs, when they discounted the bills in question, took them, as they allege, under the power made by defendant in New York, and there to be paid, and knew, or were bound to ascertain the law which governed their validity. (*Hull* v. *Blake*, 13 Mass., 153; *Saunders* v. *Drake*, 2 Atk., 465; 2 Kent's Com. [5th ed.], 459, and note; Story on Conflict of Laws, § 301, *b* [4th ed.]; *Jackson* v. *Jackson*, 1 Johns., 424–433; *Nellis* v. *Clark*, 20 Wend., 24; *Sheriff* v. *Hopkins*, 1 Cow., 101; *Robinson* v. *Bland*, 2 Burr., 1077.)

*Tanner & Potter*, for the respondents. The promise contained in defendant's letter amounted to an acceptance of the two bills in favor of the plaintiff, who had received the bills upon the faith thereof, and had paid value therefor. (1 R. S., 768; *United States* v. *Fisher*, 2 Cranch, 358; *Coats* v. *The Mayor of N. Y.*, 7 Cow., 585; *Stuyvesant* v. *Mayor of N. Y.*, 7 id., 606; *Jerome* v. *Ross*, 7 Johns. Ch., 342.) Authority to draw drafts is equivalent to a promise to accept. (*Barney* v. *Worthington*, 37 N. Y., 112; *Ulster Co. Bank* v. *McFarland*, 5 Hill, 433; S. C., 3 Den., 553; *Bank of Michigan* v. *Eli*, 17 Wend., 510.) The promise contained in the letter is an acceptance at common law and binds the defendant. (*Goodrich* v. *Gordon*, 15 Johns., 6; *Parker* v. *Grule*, 2 Wend., 545; *Barney* v. *Worthington*, 37 N. Y., 112; *Ulster Co. Bank* v. *McFarland*, 3 Den., 553; *Bank of Michigan* v. *Eli*, 17 Wend., 510; *Scott* v. *Pilkington*, 15 Abb., 280; *Wiltenburgh* v. *Cook*, 18

Wall., 421, 429; and see *Coolidge* v. *Payson*, 2 Wheat., 66; *Pilau & Rose* v. *Misrop*, 3 Burr., 166; *Pierson* v. *Dunlop*, Cowp., 571; *Mason* v. *Hunt*, Doug., 296; *Townsley* v. *Gumrall*, 2 Peters, 170.) At common law a conditional acceptance or promise to accept " is as binding as an absolute acceptance if the condition has been performed." (*U. S.* v. *Bank of Metropolis*, 15 Peters, 377; *Coolidge* v. *Payson*, 2 Wheat., 66; 1 Parsons on Notes and Bills, 304; *Munger* v. *Shannon*, 61 N. Y., 259.) The existence of the necessity which was to authorize the drawing of the draft " was necessarily and peculiarly within the knowledge of defendant's agent." The act of drawing the drafts was an affirmation of the existence of that necessity, and defendant is estopped from denying the fact that such necessity existed. (*Hurn* v. *Nichols*, 1 Salk., 289; *North River Bank* v. *Aymer*, 3 Hill, 262; *Farmers and Mechanics' Bank* v. *Butchers and Drovers' Bank*, 16 N. Y., 125; *Griswold* v. *Haren*, 25 id., 595; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 id., 30–68, etc.; *Tome* v. *Parkersburgh Railroad Co.*, 39 Md., 36; 17 Am., 540, 555.) The alleged usury constitutes no defense. The bills are to be construed and governed by the laws of Canada, unless a different place of performance is named. (*Curtis* v. *Leavitt*, 15 N. Y., 1, 86, 88; *Lee* v. *Selleck*, 33 id.; *Cope* v. *Alden*, 41 id., 303.)

BOARDMAN, J. :

By the answer the allegations of the complaint are all denied, except the written authority to Loveland to draw drafts as defendants' agent. The affirmative defense is set up, that such drafts were usuriously discounted by plaintiff and therefore void for such usury. The facts stated in the complaint were proved upon the trial. It is now claimed they do not constitute a cause of action. In this I think the defendant is in error. The authority of Loveland, as defendant's agent, to draw drafts being conceded, it is not necessary that the words " as agent" should have been annexed to his name upon the drafts, so long as the fact of his agency was disclosed and plaintiff acted upon the faith of it. Nor was it necessary for the plaintiff to ascertain whether such moneys were needed for the purchase of lumber, nor to see that the lumber purchased therewith was consigned to the care of P. W. Scribner

& Co., Whitehall, N. Y. The discretion and judgment in these respects were committed by the defendant to his agent, and he alone was competent to decide, and responsible for performance. (*North River Bank* v. *Aymar*, 3 Hill, 262; app., 16 N. Y., 143.) By the broad authority given, Loveland alone could determine whether the necessity existed, and his decision bound the defendant. Any other conclusion would make the written instrument a nullity, or a means for defrauding innocent and confiding money lenders. If, however, there is any vital force in these provisions in the authority, I think the defendant should have set up in his answer the conditions and the breaches by way of affirmative defense. By his failure in that respect, he is debarred from proving a lack of necessity for the money for the purpose indicated, and in the absence of such defense and proof, it will not be presumed that Loveland acted in bad faith and without authority in drawing these drafts.

The defendant, under the authority given to Loveland, was in effect himself the borrower of this money, and as such was liable, independent of the question of acceptance. (*Barney* v. *Worthington*, 37 N. Y., 112.) But the language of the instrument itself, amounts to an unconditional written promise to accept the draft, plaintiff having discounted it upon the faith of the authority for a valuable consideration. (1 R. S., 768, §§ 6, 7, 8; *Ulster Co. Bank* v. *McFarlan*, 5 Hill, 432; affmd. 3 Den., 553; *Bank of Michigan* v. *Ely*, 17 Wend., 508; *Scott* v. *Pilkinton*, 15 Abb., 280.)

The evidence that Loveland left the writing with plaintiff when he applied for the discount, was proper in connection with the evidence that plaintiff discounted the drafts on the faith thereof, as charged in complaint.

The conversation between Loveland and plaintiff's cashier was competent. (*North River Bank* v. *Aymar*, 3 Hill, 262–267.) It was part of the *res gestæ*; the declarations were made in pursuance of the authority confided to Loveland by defendant, and hence the defendant was chargeable with the effect of such language as if used by himself; such declarations were also evidence of the necessity of drawing the drafts for the purchase of lumber.

The other exceptions to evidence have been sufficiently disposed of in the views of the case already taken; it follows that the com-

plaint stated a cause of action, and that the proof was competent and adequate to sustain the allegations of the complaint.

It remains for us to consider the defense of usury interposed by the answer. The money was borrowed by defendant by his agent in Canada, upon a draft executed there, and discounted by the plaintiff, which is a Canadian corporation ; the draft was not, by its terms, payable at any particular place ; the money was borrowed to be used in Canada, and, in the absence of any other place named, was payable at plaintiff's bank. It is conceded the drafts were not void for usury under the law of Canada; but it is contended by the defendant that it was a contract to be performed in New York, and hence is governed by the laws of New York in relation to usury. If that be true, the debt was usurious and void. The evidence that the contract was to be performed in New York, consists of the facts that the defendant resided, in that State, and that the draft was drawn on him specifying his place of residence ; but in my judgment these facts do not produce such result ; the contract was wholly made in Canada, one party being a resident, and the other party temporarily there in the prosecution of his business. The agent's act was the act of the principal, and as we have seen, the principal being the borrower, was bound by the obligation without acceptance ; the contract was therefore in no sense to be performed in New York. If sent forward for acceptance, such acceptance would not be a performance of the contract in New York; no place of payment being designated, it is the duty of the borrower to pay where he borrows ; that is what the law requires of him. (*Cope* v. *Alden*, 53 Barb., 353 ; S. C., 41 N. Y., 303, and cases cited ; Story on Conf. Laws, § 317.) The lender is not bound in such cases to seek the borrower to ask for payment; the borrower must find his paper and pay it; all this, by the terms of this contract, must be done in Canada at plaintiff's bank. The execution, interpretation and validity of the instrument will be determined by the law of the place where it is made and to be performed. The manner of enforcement of the remedy is governed by the law of the place where the action is brought. (*Scudder* v. *Union Nat. Bk.*, 1 Otto, 406, and cases cited.) As the suit to enforce performance is brought in this State, our law will control the remedy ; to that extent and no further are our laws to affect this contract. (*Lee* v. *Selleck*, 33

N. Y., 615.) The nature and effect of these drafts are further illustrated in the opinion of DWIGHT, C., in *First Nat. Bk. of Toledo* v. *Shaw* (61 N. Y., 293); see also *Davis* v. *Garr* (6 N. Y., 124). I think these conclusions correspond with the purposes and intention of the parties, who both supposed they were contracting with reference to the laws of Canada. As soon as the holder parted with value for the drafts, they had a legal inception; if they were legal and valid obligations at that time against the defendant, no subsequent action of the defendant could change their character in respect to usury.

These considerations dispose of the questions presented upon this appeal, and lead to an affirmance of the judgment with costs.

LEARNED, P. J., and BOCKES, J., concurred.

Judgment affirmed with costs.