J. C. WOODARD *vs.* GRIFFITHS-MARSHALL GRAIN COMMISSION COMPANY.

May 12, 1890.

Bill of Exchange—Written Promise to Accept.—A promise in writing to accept a bill of exchange, made within a reasonable time before it is drawn, will amount to an acceptance of the bill in favor of a person to whom the promise is communicated, and who also takes the bill for a valuable consideration, on the faith and credit of the promise.

Same—Purchase of Bill in Reliance on Promise—Notice.—It is not essential that the written promise to accept be shown or exhibited to a person who takes the bill relying upon its existence; but, if he chooses to act without personally inspecting the promise in writing, he is held to have such information as he would have acquired by reading the same.

Appeal by defendant from an order of the district court for Hennepin county, *Lochren*, J., presiding, refusing a new trial after a trial by the court and judgment of $2,000 and interest ordered for plaintiff.

*Stocker & Matchan*, for appellant.

*Wilson & Bowers,* for respondent.

COLLINS, J.    On January 11, 1889, the defendant corporation made its sight draft or bill of exchange for the sum of $4,000, directed to one C. W. Seefield at St. Charles, Minn., and sold and delivered it to a bank in the city of Minneapolis, (defendant's place of business,) securing credit on its account with said bank for the amount thereof. The bank immediately forwarded this bill for collection to the plaintiff, a banker at St. Charles, by whom it was received January 14th. Plaintiff presented it to Seefield for acceptance on the same day, but it was not accepted or paid, the latter claiming that it was improvidently drawn, although, in fact, Seefield was then indebted to defendant in a sum greatly exceeding the amount of the bill.    Before this, on the 12th of January, Seefield, having been notified of the making of the draft, wrote and wired defendant, requesting that it be recalled, and one for $2,000 be made in place of it.    To this defendant responded by wire, on January 14th, as follows:  "Pay our draft for four thousand dollars to-day; then draw back on us for two thousand."    Seefield immediately wired defendant: "Will pay draft and draw back, as requested."    As soon as this telegram was received, defendant wrote Seefield, under date of January 14th, acknowledging receipt of dispatch and letter of the 12th in reference to recalling the draft, and saying, further, that it had received "your letter in regard to our draft,   *   *  *   to which we replied, 'Pay our $4,000 draft, and make draft back on us for $2,000;' to which we received reply, 'Will pay draft and draw back, as requested.'" There was also reference to the balance due the writer, speedy payment being urged.    This letter reached Seefield before the 17th, and on that day he made a bill of exchange for $2,000, directing it to defendant corporation, as authorized.    He then informed and communicated to the plaintiff the defendant's instructions and directions to draw the same, presented it to him for sale, the proceeds to be applied upon the larger draft, still in plaintiff's hands for collection. Relying upon the instructions and directions so communicated to him, plaintiff purchased the draft, paying its face value, applied the amount upon the other, Seefield paid the balance, and the full sum

was duly transmitted to the bank from which the collection was forwarded. Upon presentation of the draft so purchased by plaintiff, payment was refused, and the object of this action is to recover the amount from defendant. Upon a trial by the court, without a jury, judgment was directed, upon findings of fact, in plaintiff's favor, and the appeal is from an order refusing a new trial.

From the foregoing statement, it will be noticed that the plaintiff was only informed of the existence of the letters and telegrams. There was communicated to him the fact that, by means of correspondence, the defendant had directed and authorized Seefield to draw upon it for the sum of $2,000, on payment of the bill which had been forwarded for collection. The letters and telegrams were not actually exhibited to plaintiff, but, in buying the draft made by Seefield, he acted and relied upon them and his information as to their contents. The appellant contends that this is not enough, but that, to enable respondent to recover, it is essential that the correspondence should have been shown to him, and that mere knowledge of its existence is insufficient. This contention is based upon the language, first found in this country in *Coolidge* v. *Payson*, 2 Wheat. 66, wherein the supreme court of the United States established the rule that, wherever it is necessary that an acceptance of a bill be in writing, a letter written within a reasonable time before or after the date of the bill, describing it, and promising to accept, is, "if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance, binding the person who makes the promise." This rule has been reiterated by the same court on several occasions, and has been followed by the state courts with great uniformity, although, at times, regret has been expressed that any other act than a written acceptance upon the bill itself had been declared sufficient. The appellant has cited a large number of cases wherein this rule has been stated in the same language, but in each the facts disclose either that there had been no communication of the contents of the letters, and hence the purchaser had not relied upon the same, or that the letters themselves had been shown. The expression upon which counsel relies, running through these cases, refers to the facts then before the courts, not to another and different state of affairs.

Here we have two essential elements fully established by the testimony—*First*, a written promise or virtual acceptance, admittedly sufficient under the authorities; and, *second*, the purchase of the draft for a valuable consideration, on the faith of the promise and acceptance. These are the material circumstances, and it is impossible to see why the information on which the respondent acted, and which was strictly correct, must needs be communicated to him in a particular way, such as the exhibition of the letters or telegrams. The appellant would have been in no different position on the trial of this case, if they had been actually shown respondent. It could not have been benefited in any practical way by his reading of the correspondence, nor has it been injured by the failure upon his part to do so. If a purchaser of drafts, made under like circumstances, neglects to inspect the writings, he incurs the risk of being imposed upon; but about this no one else need feel concerned. But the counsel for the appellant urges that any qualification of the rule as heretofore quoted would lead to the most alarming results to a commercial people, and that, under the one contended for by respondent, the recipient of a letter or telegram could make such representations relative to its contents as he might understand or infer, and thereby fasten the liability of an acceptor upon the writer of the communication. In reply to this proposition, it suffices to say that it is not the inference or understanding of the person who receives the communication which fixes the liability. That is determined by the writing. If it does not, in fact, contain the promise or acceptance, none exists.

Again, the counsel suggests, as an alarming result, should we adopt the views of the respondent, that nothing will prevent a person who has been authorized, in writing, to make a single draft, from stating its contents to an unlimited number of bankers, and selling to each a draft for the authorized amount. Should this be the case, it does not follow that the losses would be elsewhere than with the bankers, but, if it did, the counsel has overlooked the fact that he who receives such written authority might exhibit it to as many persons as he could orally communicate its contents to, and possibly more. The only way to completely prevent the result pre-

dicted by counsel would be to declare that, in addition to an exhibition of the written authority to the purchaser of the bill, it must be attached to and follow the draft to the person upon whom it is made, the promisor. This, the counsel will admit, has never been laid down as necessary. We think it fully established that a promise in writing to accept a bill of exchange, made within a reasonable time before it is drawn, will amount to an acceptance in favor of the person to whom the promise is communicated, and who takes the bill for a valuable consideration, on the faith and credit of the promise. 3 Kent, Comm. *85; *Bank of Michigan* v. *Ely,* 17 Wend. 508; *Scudder* v. *Union Nat. Bank,* 91 U. S. 406; *Lewis* v. *Kramer,* 3 Md. 265; *Clarke* v. *Cock,* 4 East, 57. That the promise be made, (and in writing, wherever a written acceptance is required,) and that it be made known and communicated to one who, upon the faith of the promise, purchases the bill, are the material circumstances which fix the liability. So far as we are able to find from an examination of the authorities, it has never been held, in cases where this precise question has been raised, that the written promise and authority must be shown the purchaser. The paramount inquiry has been as to its existence, and as to the purchaser's knowledge of and reliance upon it, when taking the draft.

It is further urged that the plaintiff cannot recover, because the draft for $4,000 was not paid on January 14th. The telegram of that day, from appellant to Seefield, was, "Pay our draft to-day, and then draw upon us for $2,000;" while in the letter written upon the same day, in response to Seefield's dispatch that he would pay the bill and draw back as requested, the words "to-day" were omitted from that part which purports to state *verbatim* the language of the message. The respondent, although not shown the correspondence by wire and mail, must be held to have all the information which he would have obtained by a personal inspection of the same. The draft upon Seefield was presented upon the 14th, and, with three days of grace, matured upon the 17th, the day on which the bill in dispute was made. A reading of the various communications between Seefield and appellant would not have indicated to respondent, or to any ordinary business man, that, as a condition to Seefield's right

to draw for $2,000, he was required to meet the draft upon him on the 14th, or in any way, except according to its tenor, and in the usual course of business. The intention to restrict Seefield's authority in the manner now contended for does not appear from an examination of all of the letters and telegrams.

Order affirmed.